James Coy **RICHARDSON**, Plaintiff,

v.

Elliott L. **RICHARDSON**, Secretary, Health, Education and Welfare, Defendant.

Civ. A. No. 70–C–38–D.

United States District Court, W. D. Virginia, Danville Division.

Oct. 8, 1971.

F. H. Conway, Danville, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, District Judge.

James Coy Richardson, the claimant brings this action under Section 205(g) of the Social Security Act, 42 U.S.C.A.

§ 405(g), for review of a decision of the Secretary of Health, Education and Welfare, which held that the claimant was not entitled to a period of disability nor disability benefits under the Act, as amended, 42 U.S.C.A. §§ 416(i) and 423. The decision rendered by the hearing examiner on January 12, 1970 became final when the Appeals Council, after remand from this Court, affirmed the examiner's decision on May 21, 1971. This Court may not disturb the findings of the Secretary if they are supported by substantial evidence. 42 U.S.C.A. § 405(g); Underwood v. Ribicoff, 298 F. 2d 850 (4th Cir. 1962).

The claimant filed his application for disability insurance benefits and a period of disability on January 9, 1969, alleging disability from October 11, 1968, because of rheumatic heart disease, diabetes, and hypertension. The application was denied initially upon reconsideration and the claimant was so notified. Upon request, a hearing was conducted in Danville, Virginia on December 2, 1969, at which the claimant, not represented by counsel, appeared and testified. Dr. Ralph K. Roberts, a vocational expert, and Dr. John J. Neal, Jr., a medical advisor, also appeared and testified. Based upon the record evidence, the hearing examiner held that Richardson had failed to show by competent medical evidence that he was suffering from an impairment, or impairments, of such severity as to preclude him from engaging in any substantial gainful activity at any time for which his application was effective. The Appeals Council denied the claimant's request for review.

■ This Court remanded the case to the Secretary in order to take further evidence on the existence and nature of Richardson's mental impairment. After examination of the reports of a psychiatrist and a psychologist, the Appeals Council again affirmed the hearing examiner's decision. Because the claimant meets the special earnings requirements at least through December 31, 1973, the decision is necessarily limited to the date it was rendered as to the finding of disability or non-disability.

The pertinent facts are not disputed. The claimant is 47 years old and resides in Danville, Virginia, with his wife and four children. He attended one year of college, served in the United States Army during World War II as a file clerk, and at times has been variously employed as a bookkeeper, file clerk, and supervisor of three employees in a soft-drink company. For the most part since 1948, he has worked in his father's retail general store in Danville. After suffering what he called his third "heart attack", he left his father's employ on October 11, 1968, and has not worked since, except for a few days in January 1969.

The claimant's medical difficulties relate primarily to heart disease and hypertension, although other sources of problems are noted. A report from the Veterans Administration Hospital in Durham, North Carolina, dated June 15, 1967, reveals that claimant was hospitalized from May 25, 1967 to June 8, 1967, during which a cholecystectomy was performed. The discharge summary noted a diagnosis of "(1) Cholelithiasis. (2) Rheumatic heart disease with minimal aortic insufficiency and mitral insufficiency. (3) Essential hypertension. (4) Arteriosclerotic Heart Disease. (5) Penicillin allergy." A subsequent report from the hospital reveals that an eye examination was conducted in July, 1967, which indicates that the claimant's vision can be corrected to 20/30 and 20/60. The same report contains an electrocardiographic record, summarized as: "Has voltage more than 30 mm in V5. Otherwise within normal limits."

The claimant was again admitted to the Veterans Administration Hospital in Durham, on September 15, 1967, with complaints of chest pain, nausea and dizziness. Dr. David L. Brewer, in the hospital summary noted, *inter alia*:

> On physical examination his blood pressure was 165/100, pulse was 70, and his temperature 37. The patient had Grade I arteriosclerotic vessels in

his fundi * * * There was a Grade II/VI systolic ejection murmur and a holosystolic murmur at the apex radiating into the axilla. There was a faint Grade I/VI diastolic murmur over the primary aortic area. * * * Initially, the patient was treated as though this pain was myocardial in origin however there was no change in his SGOT or LDH during hospitalization * * * As exercise tolerance test was performed which was normal *` * * The etilogy of the chest pain is uncertain but it was agreed with the Cardologist that the patient probably did not have cardiac pain. His mitral insufficiency and aortic insufficiency were quite mild and there was very little evidence of difficulty because of this but the EKG showed left atrial hypertrophy. The patient is felt to be competent and is capable of returning to his usual activities.

He was discharged on September 28, 1967, with a diagnosis of: "(1) Essential hypertension. (2) Diabetes mellitus. (3) Rheumatic heart disease with minimal mitral insufficiency and aortic insufficiency. (4) Chest pain of undetermined etiology. (5) Asymptomatic hyperuricemia."

On December 24, 1968, the claimant was examined by the Veterans Administration Outpatient Clinic in Roanoke, Virginia to obtain agency compensation. Claimant reported that he was on medication for diabetes, and that he had been advised to procure clerical work and to quit the grocery business. On examination the murmurs were again detected and the claimant was found to be somewhat overweight. The diagnosis recited: "(1) Diabetes, by history, not found at this time; (2) Essential hypertension, mod. severe; (3) Rheumatic heart disease, severe; (4) Hyperuricemia."

The claimant was later examined consultively by Dr. Edwin J. Harvie, Jr., an internist. The claimant displayed the appearance of a well-developed and well-nourished individual, with a regular heart rhythm, clear lungs, and adequate peripheral circulation. Chest x-rays disclosed a normal heart size and there were no abnormal pulmonary findings. Dr. Harvie noted that the claimant did have rheumatic heart disease with mitral insufficiency, class I–B, but the fatigue of which he complained was not based on the heart disease. The doctor was also troubled by the lack of objective findings to substantiate the severity of Richardson's complaints. Although the claimant was not interested in his work and poorly motivated in general, Dr. Harvie opined that he could engage in gainful activity, not requiring significant physical exertion.

Dr. A. W. Viccellio, the claimant's regular physician, noted in a medical report dated June 30, 1969 that he has seen claimant approximately twice yearly since 1956. He noted that the claimant has had chest pain and shortness of breath for several years. The diagnosis was essentially the same as that when the claimant was hospitalized in September, 1967. Dr Viccellio also noted that the claimant's impairments had prevented work since October 12, 1968. Subsequently in his position as Medical Director, Dr. Viccellio examined the claimant for employment at Dan River Mills, Inc. on March 12, 1970. Because of his defective vision, rheumatic heart disease, and mild diabetes, the claimant was rejected.

Dr. Harvie re-examined the claimant on November 19, 1969, and noted that the latter's condition was generally unchanged from the previous examination six months before. The doctor confirmed his previous diagnosis of rheumatic heart disease with mitral insufficiency, but reported that there was lacking good evidence for coronary arteriosclerotic heart disease. The claimant appeared to be mildly depressed and unhappy with his environment. Although cautious, Dr. Harvie again attributed part of the symptoms to psychogenic factors, since the symptoms seemed out of proportion to the objective evidence.

At the hearing Richardson testified that he takes medication for diabetes, nerves, and high blood pressure. While sitting he experiences no physical problems unless he is emotionally upset. Chest pain occurs upon exertion, and he must sit and rest after walking three blocks and back. He has a good appetite, but has trouble sleeping; he drives a car, and while his wife is at work, he does most of the housework and some gardening. He is an active member of his church, serving as its treasurer.

Dr. John J. Neal, Jr., an internist with a subspecialty in cardiology, testified at the hearing that he had examined the medical reports and had heard the testimony of the claimant. He concluded that despite the claimant's emotional, diabetic, and cardiac impairments, they were not, singularly or in combination, of such severity as to preclude him from engaging in sedentary to moderate activity. Dr. Ralph K. Abernathy, a vocational expert, testified that on the assumption that claimant's impairment did not preclude his engaging in sedentary to moderate physical activity, the claimant could perform his former jobs as bookkeeper and file clerk; moreover he opined that the claimant's residual capacity would enable him to engage in any of several suggested jobs: (1) hotel and motel clerk; (2) missile component assembler; (3) missile component inspector; (4) parking lot attendant.

On February 4, 1971, Dr. R. H. Armstrong, a psychiatrist, examined the claimant at government expense. He incorporated the report of Virginia T. Tingley, a clinical psychologist, dated the same day. The psychologist found that the claimant was of at least average intelligence, but that he was "timid, anxious, obsessional and overdependent", generally diagnosed as "Psychoneurotic reaction in an immature, dependent personality." Dr. Armstrong reported that the claimant's memory was intact and his speech coherent, with no evidence of intellectual deterioration, delusions, hallucinations, or confusion. He retained good residual capacity to comprehend,

follow instructions and perform varied, complex or repetitive tasks on a sustained basis; he retained excellent residual capacity to perform simple tasks. However, he expressed little interest in challenging his status of partial invalidism and his motivation for retraining was low. Dr. Armstrong opined that plaintiff had several neurotic processes, of which the primary one was "Neurasthenic neurosis manifested by exhaustion, frequent fatigue and retreat from usual physical activity." Because of claimant's supposed inability to accept emotional factors as an explanation of his disability, psychiatric treatment would appear to be of little value.

■ In this proceeding the initial burden is upon the plaintiff to show that he suffers from impairments of such severity as to preclude any substantial gainful activity. Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); Ison v. Richardson, 327 F.Supp. 619 (W.D.Va. 1971); it is not the burden of the Secretary to make an initial showing of non-disability.

■ Establishment of a disability which would entitle the claimant to benefits under the Social Security Act is a two-step process. First, there must be a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months; and second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful activity. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966).

All of the medical reports substantiate in varying degrees the cardiac, hypertensive, visual, diabetic, and psychiatric impairments of which Richardson complains. Besides the visual problem and the diabetes, there is no real medical evidence or opinion suggesting that the impairments are remedial. It is equally clear however that if the assumption is correct that plaintiff could still perform activity not requiring significant physical activity, then Dr. Roberts' conclusion that plaintiff could return to his former

work or other relatively sedentary jobs is also correct. The issue therefore is whether the clinically demonstrated impairments preclude *any* gainful activity.

■ The medical evidence regarding the severity as opposed to the existence of the impairments is conflicting. It is true that the claimant's complaints were not entirely substantiated by clinical findings. However we cannot so easily understand the Secretary's conclusion that his primary problem is one of poor motivation, in light of the reports of the psychiatrist and the psychologist. The hearing examiner based his opinion in part upon the several extensive examinations at the Veterans Administration Hospitals, yet he ignored the determination of 100% disability apparently based on the most recent examination. The Secretary of course is not bound either by a physician's conclusion as to disability, Laws v. Celebrezze, *supra,* or by a disability award from another agency, Darter v. Cohen, 299 F.Supp. 473 (W.D.Va.1969), but he cannot and should not ignore these elements. *See e. g.* Crockett v. Cohen, 299 F.Supp. 739 (W.D.Va.1969).

■ ■ On the other hand we note that while Dr. Viccellio recited that Richardson had been disabled since October 12, 1968, his diagnosis was the same as that in the medical report of the Veteran's Administration Hospital of September 28, 1967, in which it was suggested that the claimant return to work. At this point we should like to point out that we do not believe it is controlling that Dr. Viccellio's rejection of claimant for employment at Dan River Mills is decisive for two reasons; first, it is well established that claimant's unemployment because of reasons other than the presence of physical or mental impairments, such as the hiring practices of certain employers, the lack of available work in the claimant's immediate area or the lack of job vacancies, does not constitute a proper basis for the award of Social Se-

curity disability benefits. 42 U.S.C.A. § 423(d) (2) (A); 20 CFR § 404.1502 (b); Whiten v. Finch, 437 F.2d 73 (4th Cir. 1971). Second, and more important, we do not think that Dr. Viccellio's decision to reject the claimant for employment, made in the former's capacity as Medical Director of the company, was reached entirely independent of his prior determination of disability for Social Security purposes. Although we are certain that Dr. Viccellio is a competent and able physician, we merely note that the separate determinations would carry greater weight in this proceeding had they been made by two physicians.

■ Finally and most important, there appears to be no independent medical evaluation of plaintiff's physical impairments made since November, 1969. Where as here the case appears to straddle the line between disability and non-disability, we would prefer to make a decision based upon more recent evidence. Although we have remanded the case once before, the Court still feels unable to make a satisfactory determination of whether the claimant is able to engage in any substantial gainful activity. We therefore remand this case to the Secretary to determine more fully, through physical examinations by independent physicians, the degree to which the claimant's physical impairments, particularly rheumatic heart disease and hypertension, combined with his other impairments, preclude gainful employment. We also direct the Secretary to consider the 100% disability award from the Veterans Administration in his ultimate decision.

Accordingly, it is ordered that the case be and it is hereby remanded for further proceedings not inconsistent with this opinion.

The case is stricken from the docket, but should occasion arise for its reinstatement, it may be done after notice and without payment of additional costs.