Gladys R. DAVIS, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary, Health, Education & Welfare, Defendant.

Civ. A. No. 71-C-12-A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Feb. 8, 1972.

R. E. Wick, Widener & Frackelton, Bristol, Va., for plaintiff.

Paul R. Thomson, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, District Judge.

Gladys R. Davis, the claimant, brings this action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for review of a decision of the Secretary of Health, Education and Welfare, which held that the claimant was not entitled to a period of disability nor to disability benefits under the Act, as amended, 42 U.S.C.A. §§ 416(i) and 423. The decision rendered by the hearing examiner on December 11, 1970, became the final determination of the Secretary when the Appeals Council denied claimant's request for review on December 28, 1970. The sole issue before the court is whether the Secretary's decision is supported by substantial evidence. 42 U.S.C.A. § 405(g); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Mrs. Davis filed her application for disability insurance benefits on November 25, 1969, alleging disability from February, 1968, initially because of heart disease and high blood pressure.

The application was denied both initially and upon reconsideration and the claimant was so notified. Upon request, a hearing was conducted in Bristol, Virginia, on October 14, 1970, at which Mrs. Davis, represented by counsel, appeared and testified, as did Dr. James L. Stringfellow, Mrs. Davis' physician. Based upon the record evidence, the hearing examiner held that Mrs. Davis had failed to show by competent medical evidence that she was suffering from an impairment or impairments of such severity as to preclude her from engaging in any substantial gainful activity at any time for which her application was effective. The Appeals Council, as noted, affirmed the examiner's decision. Because claimant meets the special earnings requirements at least through March 31, 1973, the decision is necessarily limited to the date it was rendered as to the finding of disability or non-disability.

The relevant facts are not in dispute. Claimant is 57 years old and resides with her adult son in Bristol, Virginia. She possesses a tenth grade education, but has had no special vocational training. After working largely as a sewing machine operator in a garment factory for over 12 years, claimant began working periodically as short-order cook and dishwasher in local restaurants. Although she continued to work irregularly for apparently two years, she suffered frequent illnesses, which eventually forced her to stop work entirely in November, 1969; she has not worked since.

Claimant's medical difficulties relate primarily to heart and respiratory disease and to bone disorders, but other sources of problems are also noted. It appears that claimant sustained back injuries in an automobile accident approximately thirty years ago. Although she sustained permanent spinal deformities, it is not entirely clear to what degree they affect her present infirmities. Later, in 1957, she experienced pulmonary difficulty which did not initially respond to antibiotics. Thereupon, according to the records of the University

of Virginia hospital, an exploratory thoracotomy was performed during which left lung tuberculoma were removed; smears then taken were negative for acid fast organisms. Responding well to post-operative care, Mrs. Davis was discharged February 24, 1957; the final diagnosis revealed tuberculoma of the left lung and chronic bronchitis.

An x-ray report from the Virginia State Health Department dated September 8, 1969 revealed minimal post-operative pleural thickening and bilateral hilar calcifications, a healed fracture of the eighth rib and a left concave scoliosis of the dorsal spine. The report noted no significant change from a 1961 film; it further revealed that claimant had had x-ray examinations in 1968 and 1967. The radiologist suggested that, in view of a strongly positive tuberculin skin test in 1968, one year of INH may be advised, which treatment was subsequently administered. A subsequent x-ray report, dated March 18, 1970, disclosed no change in claimant's film since September 8, 1969; it did note, however, that claimant had suffered respiratory illnesses since the earlier report.

At government expense, Mrs. Davis was referred to Dr. B. Y. Cowan, an internist, for evaluation on March 11, 1970. She complained of increasingly frequent spells of chest pain, faintness, rapid heartbeat and numbness. She also described indigestion, lifelong nervousness and breathing difficulties. Her past medical history indicated to Dr. Cowan that claimant has never enjoyed good health, particularly within the preceding two years. In his summary, dated March 24, Dr. Cowan noted *inter alia*:

> There is a marked deformity of the spine. There is a kyposis (sic) and scoliosis to the right of the lower thoracic and upper lumbar of the spine with compensating scoliosis of the upper throacic spine * * * There is a scar of the right posterior thoracic cage which is well-healed and non-tender. Lung fields are clear. Heart shows no enlargement. Apex is 9.5 cm from the mid-line. No murmurs were heard. Sounds are good quality * * * (Electrocardiogram) shows some S–T wave changes consistent with the digitalis (previously prescribed) but otherwise seems to be within normal limits.

Dr. Cowan diagnosed the impairments as: "(1) Hypertension heart disease, class I–B. (2) Kyphosis of the spine, question of post-traumatic. (3) Chronic anxiety state, with hyperventilation syndrome." He also commented:

> (4) At the present time, I am not a bit sure that we have evidence of severe cardiac problem but mostly cardiac manifestation secondary to her anxiety state. I believe that it is this latter problem that is of greater severity and is probably the cause of her disability.

On August 14, 1970, claimant was examined by Dr. Gordon Blackford, a psychiatrist. The doctor reported that claimant was mentally well oriented, with no evidence of delusions, hallucinations or bizarre ideation. Affectively she was moderately depressed, introspective, and somewhat withdrawn, although there were no apparent psychomotoer, retardation nor overtly disturbed thought processes. Dr. Blackford opined that claimant "presents vaguely the features of an Involuntional Depressive Reaction of moderate degree", but that she was competent to manage business affairs.

At the hearing Mrs. Davis testified that her cardiac and pulmonary ailments have become worse since early 1968, to the extent that she could not work regularly. Frequently, she is so tired from work that she must rest in bed for several days. She is unable to work at home, and she spends much of her time in bed. She does not go to church or social functions; if she goes to the grocery store, someone must accompany her. While she does cook and wash the dishes, her son does most of the housework. She is generally afraid to leave the house, except for visits across the street to Dr. Stringfellow's office. She stated

that she quit her job as a dishwasher because she could not lift trays of dishes. She has never had a job which required only sitting, but she does not feel that she is physically able to perform such a job.

Dr. Stringfellow testified at the hearing that he is Mrs. Davis' personal physician, having seen her approximately twenty times between 1965 and the date of the hearing. It appears that his findings are compatible with the other medical evidence in the record. He noted that she has frequent chest pains and respiratory illnesses. Further, claimant's kyphosis induces permanent forward bending, while the scoliosis gives her a pelvic tilt, similar in effect to having one leg shorter than the other. Like many other women her age, she is also developing osteoporosis of the spine, which is permanent and usually painful. According to Dr. Stringfellow, the skeletal disorders restrict the claimant's rib cage capacity for expansion and contraction, thereby causing shortness of breath, in addition to that caused by bronchitis; these deformities could also generate severe pain. Her combined impairments would effectively preclude claimant from prolonged sitting, standing, walking, stooping or lifting. Moreover, he doubted that she even could perform a job for very long which required only sitting for an hour or so at a time interspersed with periods of rest. Most of her visits, the doctor noted, were for treatment of acute symptoms, such as shortness of breath; however he felt that Mrs. Davis does not come more often because she cannot pay for sustained medical services.

■ In this proceeding the initial burden is upon the claimant to prove that she is under a disability as defined in the Act, 42 U.S.C.A. § 416(i), Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); it is not the burden of the Secretary to make an initial showing of non-disability.

■ Establishment of disability which would entitle the claimant to benefits under the Social Security Act is a two-step process. First, there must be a medically determinable physical or mental impairment or impairments which can be expected to last for a continuous period of not less than twelve months; and, second, there must be a factual determination that the impairment or impairments render the claimant unable to engage in substantial gainful activity. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966).

The court feels that claimant has sustained the burden placed upon her to prove disability. The medical reports substantiate the existence of the cardiac, pulmonary, psychiatric and skeletal disorders of which Mrs. Davis complains. It is equally clear however that much of the medical attention given to her respiratory ailments were precautionary measures to ward off renewed tubercular activity; this high risk tubercular status does not of itself support the establishment of a disability. In general, however, there is no medical evidence or opinion suggesting that the impairments, except certain acute manifestations thereof, are remedial. The real issue therefore is whether the severity of the impairments, as opposed to their existence, precludes *any* gainful activity.

The hearing examiner concluded *inter alia* that:

> The claimant's impairments are not severe enough to prevent substantial gainful activity comparable to her prior employment requiring no more than moderate exertion, such as sewing machine operator in the textile industry or as a cashier in a restaurant or in performing other chores about a restaurant that do not require prolonged standing, sitting, walking, bending, or lifting.

In reaching this conclusion, the examiner suggested that claimant could perform several restaurant jobs—cashier, cook, or even dishwasher—so long as she was allowed to sit or stand at her option and was not required to lift heavy objects or perform other strenuous ac-

tivity. This assessment apparently ignores claimant's own testimony that she did in fact cook and wash dishes in restaurants, that her employers knew of her condition and tried to eliminate the more difficult duties, but that because of conditions at a particular moment, she was frequently required to perform the strenuous tasks. The Secretary is in no position to guarantee that Mrs. Davis will only be required to perform light work in the restaurant. Nor can this court arbitrarily separate the duties of a particular job in order to sustain a conclusion that so long as claimant can perform the lighter duties she is not precluded from engaging in her former work. Moreover, the examiner's suggestion also ignores the opinion of Dr. Stringfellow that even with rest periods, Mrs. Davis could not engage in any activity such as restaurant cashier or sewing machine operator, which required sustained sitting or standing, walking, lifting or constant arm movement. The court notes in passing that Dr. Stringfellow's opinions concerning the disabling nature of her impairments are entitled to great weight since, as her personal physician he has seen her many times during the past several years.

Admittedly, none of Mrs. Davis' impairments singly would prevent her from engaging in gainful employment. Accordingly, the Secretary is correct in his assessment that the cardiac and psychiatric disorders are not so severe as to preclude light activity. However, the Secretary unduly minimizes the added effects of claimant's pulmonary and skeletal disorders. It is undisputed that the scoliosis, kyphosis and osteoporosis of the spine collectively induce pain and discomfort, for which she has been treated. It is also clear however that the spinal and rib cage deformities prevent facile breathing, which is already made difficult by bronchitis and other respiratory ailments. The existence of such conditions and their symptoms, the court feels, support claimant's and Dr. Stringfellow's testimony that she could not engage in any work, even part-time, on a sustained basis, although without acute exacerbations of her symptoms she apparently could perform an occasional day's work.

The Secretary is also persuaded by Mrs. Davis' failure to seek medication for her impairments during the six-month period preceding his decision. This does not alter the fact that her impairments are permanent in nature. Hence, that she has not so requested medical relief at most suggests that the symptoms had not become acute during that period. Since there is no suggestion or evidence that Mrs. Davis is malingering, her statement (and Dr. Stringfellow's belief) that she was unable to pay for his services would also present an alternative reason for not visiting Dr. Stringfellow, even though she was in fact ill. In any case, in order to establish disability, claimant need not be bedridden or suffering constantly from the acute symptoms of her condition. Roop v. Flemming, 190 F.Supp. 820 (W.D.Va.1960). Under these circumstances, the Secretary's particular assessment is not entitled to great weight.

The court finds that the claimant is in fact entitled to the establishment of a period of disability and to disability benefits under the Social Security Act. Based upon her application, however, claimant is not entitled to a period of disability commencing in February 1968. It appears that except for various absences due to illness, claimant was in fact gainfully employed in her usual jobs for most of 1968 and 1969, during which her earnings compare favorably with those in former years. Whether or not she would have been entitled to disability benefits had she not worked during that period, there is substantial evidence to support the Secretary's conclusion that she was not disabled during the period. See 20 CFR § 404.1534(a) and (c). In the last quarter of 1969, however, her work was very sporadic and after a short time she was eventually forced to discontinue the restaurant work she had previously done

because her impairments precluded her activities. Despite the court's conclusion that claimant is now disabled, her period of disability can properly begin no earlier than November 1, 1969, which date precedes that at which she no longer meets the special earnings requirements, all of which is so adjudged and ordered.

Accordingly, the decision of the Secretary is hereby reversed, and summary judgment granted in favor of the claimant as above set forth.