Winston Porter **CYRUS**, Appellee,

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education and Welfare, Appellant.

No. 9501.

United States Court of Appeals Fourth Circuit.

Argued Sept. 21, 1964.

Decided Jan. 26, 1965.

Samuel J. Heyman, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., Sherman L. Cohn, Atty., Dept. of Justice, and Thomas B. Mason, U. S. Atty., on brief), for appellant.

Floyd C. Jennings, Jr., Lynchburg, Va., for appellee.

Before SOBELOFF, Chief Judge, BRYAN, Circuit Judge, and SIMONS, District Judge.

SOBELOFF, Chief Judge.

On April 7, 1961, Winston P. Cyrus of Lynchburg, Virginia, filed an application with the Social Security Administration for disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C.A. §§ 416(i) and 423. Since then he has been engaged in numerous proceedings in an effort to obtain the benefits of the Act.[1]

The Secretary here appeals from the order of the District Court which (1) determined that the Secretary's findings adverse to Cyrus' claim were not supported by substantial evidence on the record as a whole, (2) granted Cyrus' motion for summary judgment, and (3) held him entitled to disability insurance benefits.

The statutory test for determining a claimant's right to benefits under the Act is whether he is under a "disability," defined by section 216(i), 42 U.S.C.A. § 416(i), as "inability to engage in any

---

1. The denial of Cyrus' application for disability benefits by the Bureau of Old Age and Survivors Insurance of the Social Security Administration in July, 1961, and by its hearing examiner in March, 1962, were affirmed by the Appeals Council in June, 1962. On review, the District Court, in September, 1962, remanded the case for the taking of further evidence. In January, 1963, a hearing examiner again denied the application. Thereafter, upon claimant's request, a third hearing was held in June, 1963, and the application was once more denied. The Appeals Council adopted the last decision of the examiner, which thus became the decision of the Secretary of Health, Education and Welfare.

substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *."

As this court recently stated in Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964):

"There really are two steps to a finding of disability: first a finding of a 'medically determinable physical or mental impairment * * *' and, second, a finding that the impairment in fact causes an inability to 'engage in any substantial gainful activity * * *.'"

The present controversy revolves around the second step, and it is against its background that we examine the evidence of (1) objective medical facts, (2) expert medical opinion, (3) subjective evidence of pain and disability and, most important for purposes of this case, (4) claimant's age, educational background, and work history. Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

Born on June 21, 1911, and thus 49 years of age during the critical period here in question, Cyrus grew up on a farm, and has had a fourth grade education. In 1929, he left the farm and for a period of six months worked in a cotton mill, filling batteries. From late 1929 until 1942 he worked for the Craddock-Terry Shoe Company. His job consisted primarily of climbing up a ladder and bringing down shoe lasts from bins. Between 1942 and 1945 he was employed in Norfolk, Virginia, as an ordnance helper, an occupation requiring the handling of ammunition shells weighing 70 pounds or more. In September, 1945, he went to work for the Blue Ridge Manufacturing Company which employed him until 1956. At first he ran a banding machine, a job which required him to stand all day. From 1948 until 1954 he performed the duties of a garment cutter, operating an electric cutting machine. Due to developing pain in his back and legs, he had difficulty standing and bending, as this job required. He underwent an operation on his back in 1955 to alleviate his condition and, upon his return to work late in that year, was assigned less strenuous duties as a clothing inspector. After a short time he had to leave this job because of inability to stand all day. Later, he tried working for one month in 1957 as a male nurse, but found himself unable to raise and lower patients in their hospital beds. He then obtained employment as a taxicab driver. At that job he worked intermittently both before and after 1958, when he underwent a second operation on his back. After this, he was unable to continue in the taxicab driver's job. He left it in 1959.

Cyrus has not held another job since that time although, in 1959 and 1960, he tried unsuccessfully to get work with his former employers, the Blue Ridge Manufacturing Company and the Craddock-Terry Shoe Company.

The objective medical evidence is that since 1951, Cyrus has experienced severe back pains caused by ruptured discs. The surgery, both in 1955 and 1958, were spinal laminectomies and fusions. Even after these operations, his doctors observed that Cyrus had only limited bending motion in his back. Dr. Novak noted deep furrows in Cyrus' face, which indicated to him that Cyrus was enduring persistent pain.

The hearing examiner had before him evaluations by six doctors. Dr. Sheffey, Cyrus' family physician, testified that Cyrus was "not able to enter into his substantial gainful employment on or before April 7, 1961," the date of the claim.

A 1961 report of Dr. Platt, Cyrus' surgeon, stated that Cyrus was:

"unable to do any except sedentary work, office type, but has had no training to qualify him for this." His condition was "growing progressively worse and * * * he is unable to work as a cab driver or any work requiring prolonged standing or sitting. * * * [F]urther surgery is [not] indicated."

He explained that further surgery, after the two operations, might result in paralysis. He considered Cyrus totally dis-

abled. Dr. Platt's 1963 report concluded that Cyrus had the physical capacity for only sedentary work, but for this he was unsuited by education and training; the doctor therefore considered it impossible to rehabilitate him.

Dr. Novak, whom Cyrus employed for a psychiatric evaluation, and Dr. Botton both found Cyrus totally and permanently disabled.

The only other medical opinion evidence was that of Drs. Stewart and Allen, to whom the hearing examiner referred Cyrus for pre-hearing evaluations. They expressed the opinion that Cyrus would be able to do an eight-hour-a-day job, four hours at a time. We shall refer to their testimony later.

In addition to Cyrus, his relatives, neighbors, and others testified in detail to evidences observed by them of his pain and disability in work, social, religious and everyday activities.

Dr. Edwin Thomas, a vocational counselor called by the examiner, referring to the "U.S. Dictionary of Occupational Titles," as well as a manual entitled "Estimates of Worker Trait Requirements," concluded that there were numerous jobs in the economy that Cyrus was capable of performing. As specific examples, Dr. Thomas mentioned jobs in the shoe industry as "Fancy Stitch Marker, Hand," and "White Shoe Doper." He testified that he selected these particular jobs because Cyrus had once been employed by the Craddock-Terry Shoe Corporation, but ignored the fact that before his disability, when Cyrus worked in the shoe factory, it was not at such skilled operations but only as an unskilled worker. He also suggested jobs as "Keeper" in a dog kennel, assembler in a manufacturing industry, and guard or gateman at a manufacturing plant.

On the basis of this evidence, the examiner concluded that although "claimant's back condition may prevent him from engaging in his former or customary occupation of clothes cutter," he was not unsuited for his former jobs as taxicab driver or hospital attendant. He ignored the history of Cyrus' earlier failure as a taxi driver because he had to wear a brace and was unable to assist passengers in lifting grocery packages or other baggage. He also failed to give weight to Cyrus' experience of incapacity to perform his hospital duties by reason of his back condition.

A further basis for denying disability benefits was the finding that Cyrus "was capable of performing the functions of light or sedentary occupations prevailing in the economy." Gotshaw v. Ribicoff, 307 F.2d 840, 844 (4th Cir. 1962), cert. denied, Heath v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963).

We agree with the District Court that there was no substantial evidence on the record as a whole which would support such a conclusion.

■■ While it is true that a claimant has the burden of proving his inability to perform any substantial gainful activity, it is not expected that this burden shall be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964); Ollis v. Ribicoff, 208 F.Supp. 644 (W.D.N.C.1962). Nor is he required to negative every remote possibility that a fertile imagination may conjure up. Butler v. Flemming, 288 F.2d 591, 595 (5th Cir. 1961); Underwood v. Ribicoff, 298 F.2d 850, 854 (4th Cir. 1962). This record shows that not only has Cyrus successfully met his burden, but the Secretary's affirmative finding that Cyrus is capable of performing light, sedentary occupations is a conclusion without substantial foundation.

The medical evidence that Cyrus suffers from a disability is uncontradicted. The only conflict is as to the extent of his residual capacity. Normally, it is for the Secretary and not the courts to resolve conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). But where the Secretary places reliance upon one portion of the testimony to the disregard of overwhelming evidence to the contrary, the Secretary's conclusions may not stand. Thomas v. Celebrezze, supra.

The doctors who were intimately familiar with Cyrus' medical condition, Dr. Sheffey, his family physician, Dr. Platt, his surgeon, and Dr. Novak, a psychiatrist, concluded that he was totally and permanently disabled and impossible to rehabilitate. Cyrus' back condition was growing progressively worse, but further surgery was not indicated because it would probably result in paralysis. The testimony of these doctors was that the combination of Cyrus' inability to sit for any considerable length of time, his educational limitations and the lack of training removed the practical possibility of retraining for a sedentary job with higher qualifications.

On the other hand, there were the assertions of Drs. Allen and Stewart, hired by the Social Security Administration to evaluate Cyrus' condition. They expressed the view that he would be able to work if he could arrange to sit for two four-hour shifts. Dr. Stewart was most guarded in his answer. He said he saw no neurological reason disqualifying Cyrus from such an undertaking. Both he and Dr. Allen frankly admitted, however, that because they had no prior knowledge of Cyrus' history and only a limited time in which to examine him, their evaluations might not be entirely accurate. This is an important concession. Considering the nature of their testimony, we think it was not of such substantial nature as to negate the overwhelming evidence establishing the claimant's disability.

An even more serious defect in the Secretary's finding, however, is the total absence of proof that jobs exist in the local economy which Cyrus, with his handicap, is capable of performing. The Secretary's conclusion rests entirely on the vocational counselor's reliance on capsule job descriptions appearing in the "U.S. Dictionary of Occupational Titles," and "Estimates of Worker Trait Requirements." The record is barren of evidence to show that he actually checked to determine whether the jobs he cited were available in the vicinity of Cyrus'

home. In fact, the decision of the Appeals Council specifically states it has not attempted to show "proof of specific job openings or vacancies which would have been available to the claimant * * *."

Although he testified that jobs in the shoe industry as "Fancy Stitch Marker, Hand" and "White Shoe Doper" were available locally, there is no evidence that he actually checked with the Craddock-Terry Shoe Corporation, which he knew to be the only area shoe manufacturer, to see if they employed any people for these jobs, to say nothing of the more pertinent issue which is the employability of this claimant with his restricted capacity. On this point the Secretary's witness conceded on cross-examination that employers, concerned about their insurance programs and safety records, are reluctant to hire persons in Mr. Cyrus' condition.

The conclusion that the job of kennel "Keeper" was available was reached speculatively by determining that four kennels were listed in the telephone directory. The inquiry went no further.

Dr. Thomas inferred from the existence of several large industrial plants that jobs as guards and gatemen were available in the local economy.

The fanciful nature of Dr. Thomas' testimony is perhaps best revealed by his own comment that "there are thousands of jobs here [in the "U.S. Dictionary of Occupational Titles"], some of them sound funny." Indeed, some of those suggested, particularly the job as kennel "Keeper," requiring physical activity in handling the animals, do "sound funny" when Cyrus' background and physical limitations are taken into account.

■ The "U.S. Dictionary of Occupational Titles" and other similar materials may have a proper function. But exclusive reliance on these books is not enough. Ray v. Celebrezze, 340 F.2d 556 (4th Cir. 1965). The existence of jobs in a compilation running the full gamut from astronaut to zookeeper, available somewhere in the national economy, from Anchorage, Alaska, to Zapata, Texas, is of little relevance. Since the abstract

"average" man is not the standard to be used, Pearman v. Ribicoff, 307 F.2d 573 (4th Cir. 1962), there must be evidence to show the reasonable availability of jobs which this particular claimant is capable of performing.

The Secretary complains that the District Court wrote no opinion. We agree that ordinarily it is desirable to have the advantage of the trial court's analysis and reasoning. We recommend to trial judges that they should prepare opinions in cases of this type, but this is not indispensable for affirmance on appeal when the record plainly supports the District Court's order. Unless the trial judge desires he need not designate the opinion for publication.

The proof of Cyrus' disability is strong, and the evidence to the contrary is lacking in substance. After the long pendency of the application, we see no reason to remand the case for the taking of further testimony. The District Court's order will be

Affirmed.