Dewey J. HASSLER, Plaintiff-Appellant,

v.

Casper WEINBERGER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 73-1754.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1974.

Decided Sept. 5, 1974.

John A. Burgess, South Bend, Ind., for plaintiff-appellant.

Kathryn H. Baldwin and Stanton R. Koppel, Attys., U. S. Dept. of Justice, Washington, D.C., John R. Wilks, U. S. Atty., Fort Wayne, Ind., for defendant-appellee.

Before PELL, STEVENS, and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

On July 18, 1969, plaintiff Dewey Hassler applied to the Social Security Administration for a period of disability and disability benefits. The Secretary of the Department of Health, Education and Welfare denied the application. Hassler commenced an action in the district court under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for review of the final decision of the Secretary. The district court denied the plaintiff's motion for judgment on the pleadings and sustained the Secretary's motion for summary judgment. Judgment was entered accordingly and this appeal followed. The sole question on appeal is whether there was substantial evidence to support the Secretary's determination.[1]

I

At the time of his application, Hassler was 46 years old, married, and had a high school education. Until he ceased being employed in June 1969, the claimant had worked for over 23 years at the McCord Corporation. His most recent jobs there had been as a watchman and as a radiator inspector, tasks which Hassler described as requiring walking but no lifting. Hassler receives $182 a month as a pension from his former employer and $50 a month in proceeds from a G.I. insurance policy.

In his application, Hassler listed a number of physical impairments ["hearing, heart, lung (chronic pneumothorax)"] as the cause of his inability to work. The claimant submitted in support of his application the report of his treating physician, Dr. James Coursey, a general practitioner. In his report, Dr. Coursey, after reviewing Hassler's physical problems, stated as part of his diagnosis:

"Psycho-social adjustment problem—severe; particularly with regard to steady employment at factory work."

At the request of the Disability Determination Section, Hassler was also examined by Dr. Howard Engel, an internist. On the basis of his examination of the claimant, Dr. Engel concluded: "I can see absolutely no reason why this man cannot be hired to do sedentary-type work." Dr. Engel immediately added, however, that "[t]here is a tremendous amount of psychological overlay in this situation and I am afraid that it will be difficult for this man to take any type of work."

The agency denied Hassler's application for benefits. Hassler then requested and was granted a hearing before an examiner.

At this hearing, Hassler represented himself and continued to rely only upon his physical impairments as the basis for disability benefits. After reviewing the evidence, the hearing examiner denied the disability benefits on the ground that Hassler did not have an impairment, or a combination of impairments, so severe as to preclude any substantial gainful activity, including the work in which the claimant had experience.

When Hassler asked for review of the hearing examiner's decision, the Appeals Council requested a psychiatric examination of Hassler. All three consultants seeing him found Hassler to have psychological problems.[2] Dr. Kooiker, a Dip-

---

1. 42 U.S.C. § 405(g) provides, in pertinent part: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."

2. Gordon Reinschreiber, a psychiatric social worker, stated:
 "The degree of impairment of the patient's ability to relate to other people appears to

lomate of the American Board of Psychiatry and Neurology, who had received the reports of the psychiatric social worker and the clinical psychologist, gave the most specific diagnosis:

"DIAGNOSIS No. 1: Hypochondriacal neurosis. This examiner considers that for practical purposes an equivalent diagnosis would be conversion reaction. AMA impairment rating—Class 2F, impairment rating 10%.

a) Stress: In the opinion of this examiner, the basic problem is long frustrated dependency needs, some of which may have been mobilized by repeated clear-cut episodes of spontaneous pneumothorax.

b) Predisposition: See Diagnosis No. 2.

DIAGNOSIS No 2: Passive Aggressive personality. AMA impairment rating 5%.

\* \* \* \* \* \*

PROGNOSIS: In the opinion of this examiner, the patient is comfortably able to rationalize his dysfunction on the basis of various somatic symptoms. In addition to this, he is able to at least partially achieve some of his dependency needs by acquiring a disability rating from his company. Consequently, the prognosis for return to significant gainful activity is considered to be nil."

After reviewing all of the evidence, including the psychiatric reports, the Appeals Council affirmed the decision of the hearing examiner which affirmance became the final decision of the Secretary. With respect to the psychiatric evidence, the Council stated: "[T]he claimant's functional capabilities because of a nervous impairment are evaluated at only 15 percent disabling."

Hassler then filed this action for review of the Secretary's decision. Hassler was represented in the district court by counsel, who argued that Hassler's impairments were largely mental, not physical.

The district court granted the Secretary's motion for summary judgment on the ground that the Secretary's decision was supported by substantial evidence. In particular, the district court interpreted Dr. Kooiker's final prognosis "as a statement that the plaintiff does not intend to work and is totally unwilling to recognize why. Clearly, Dr. Kooiker's determination that plaintiff had only a fifteen percent (15%) mental impairment constituted more than substantial evidence that the plaintiff did not have a mental impairment within the meaning of the Social Security Act."

On appeal Hassler's counsel again stresses that Hassler's impairment is primarily mental rather than physical. This mental condition, it is argued, prevents Hassler from performing any type of work. In particular, counsel for Hassler directs our attention to Dr. Kooiker's finding that Hassler is suffering from hypochondriacal neurosis. (Dr. Kooiker noted that, for practical purposes, an equivalent diagnosis would be conversion reaction.) [3]

---

be moderate. The degree of restriction of daily activities appears to be moderately severe. The degree of deterioration of personal habits appears to be none. The degree of constriction of interests of claimant appears to be moderately severe."

Edward Strain, a clinical psychologist, reported:

"This is a hostile paranoid personality. This is a man who perceives the outside world as a threatening, over powering place and he is very paranoid about it.

"The patient, in addition, has some mild sadistic impulsives, suggesting that many of his emotional relationships are colored by a tendency on his part to hurt other people emotionally.

"Depression is moderate in intensity, a chronic disturbance in mood.

"The man does not appear psychotic at this time. His paranoid posture toward reality is stable and constant and seems to have been with him for a long time. The mild to moderate depression is also stable and chronic."

3. "Conversion" has been defined as "[a] freudian term for the process by which emotions become transformed into physical (motor or sensory) manifestations." Dorland's Illustrated Medical Dictionary (24th ed. 1965).

Such a condition is characterized by emotional distress and anxiety. The patient unconsciously produces physical symptoms to meet his psychological problem. "[T]he symptoms protect him from having to face the traumatic situation." J. Coleman, Abnormal Psychology 208 (3d ed. 1964). Since the physical symptoms are unconsciously produced, the patient himself sees no relation between his symptoms and the stress situation. This lack of intent to deceive distinguishes the conversion reaction from malingering, where the symptoms are consciously produced with intent to deceive. Coleman, *supra* at 204–210; T. Harrison, Principles of Internal Medicine 1878–79 (7th ed. 1974).

## II

■ In order to qualify for disability benefits under the Act, a claimant must show, first, that he is suffering from a medically determinable physical or mental impairment,[4] and, second, that, due to this impairment, he is unable "to engage in any substantial gainful activity."[5] Stark v. Weinberger, 497 F.2d 1092 (7th Cir. 1974); Pierce v. Gardner, 388 F.2d 846, 847–848 (7th Cir. 1967), cert. denied, 390 U.S. 928, 88 S. Ct. 865, 19 L.Ed.2d 992 (1968).

■ Insofar as physical impairment is concerned, upon which Hassler relied when he commenced the long trail seeking disability benefits, we would have no trouble in determining that there was substantial evidence supporting a decision that there was not a disqualifying physical impairment despite the fact that there was indeed evidence of physical impairment.

The fracture of a limb is a matter of easy demonstration. The fracture of that delicate but complex conglomerate of elusive and variable components termed the human mind is not so easily demonstrable even though the resultant disability may be every bit as devastating as the physical trauma in its impact. While much distance has yet to be travelled, there has been an emergence from the darkness of thinking that it is only the gibbering idiot who cannot control the exercise of his will by simply putting his mind to it. Unfortunately there is still much blurring of the boundaries between those who have lost control and those who could but choose not to control, confusion between medical hysteria and hysterical actions, and failure to differentiate between hypochondriacal neurosis and malingering with hypochondriacal manifestations. It is primarily to the psychiatrist or psychoanalyst to whom we must turn, and indeed where the reliance was placed in the present case by the Secretary, for the "medically acceptable clinical and laboratory diagnostic techniques."

In the present case, the Secretary concedes that Hassler has a mental impairment which affects his ability to engage in substantial gainful activity. (The Secretary specifically stated in oral argument that the agency does not regard Hassler as a malingerer.) The sole issue is whether Hassler's mental impairments are so severe as to make him "disabled" within the meaning of the Act.

■ In finding that Hassler was not disabled, the Secretary, as we have stated, relied on the psychiatric report submitted by Dr. Kooiker.[6] Dr. Kooiker, the Secretary noted, had stated the "im-

4. "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

5. "The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

6. The reports of the other physicians and consultants were mentioned as background in the decision of the Appeals Council but do not appear to have figured in the final assessment of Hassler's mental condition. Dr. Engel was misquoted in the decision as recognizing "that

pairment ratings" for Hassler's mental conditions to be 10% (for the hypochondriacal neurosis) and 5% (for the passive aggressive personality). Such a low impairment rating, totalling 15% at best, could never, the Secretary concluded, be sufficient to render a claimant incapable of engaging in any substantial gainful activity. We reject, for two reasons, the Secretary's interpretation of Dr. Kooiker's report.

First, the Secretary's interpretation erroneously equates the degree of mental impairment with the degree of functional disability. The Appeals Council, thus, stated in its decision that "the claimant's functional capabilities because of a nervous impairment are evaluated at only *15 percent disabling*." (Emphasis added.) This interpretation of Dr. Kooiker's findings is clearly erroneous: the psychiatrist reported the impairment rating—not the disability rating—to be 15%. There is nothing in the record to support the Secretary's assumption that the degree of mental impairment, as measured by the particular AMA scale utilized by Dr. Kooiker, corresponds on a one-to-one basis with the degree of functional disability.[7]

Second, and more important, the Secretary's interpretation of Dr. Kooiker's report precludes a consistent reading of the entire psychiatric evaluation. The view that Hassler's mental impairments are only 15% disabling simply cannot be reconciled with Dr. Kooiker's final conclusion that "the prognosis for return to significant gainful activity is considered to be nil."

It is possible, however, to harmonize the various statements in Dr. Kooiker's report. After diagnosing Hassler's mental impairment as being, in part, hypochondriacal neurosis, Dr. Kooiker added (under the subheading "Stress"): "[T]he basic problem is long frustrated dependency needs." In his prognosis, the psychiatrist noted that "the patient is comfortably able to rationalize his dysfunction on the basis of various somatic symptoms." In addition, Hassler's dependency needs, Dr. Kooiker found, have been satisfied to some extent by the claimant's acquisition of a disability rating from his company. Dr. Kooiker then, as we have noted, presented his conclusion that "the prognosis for return to significant gainful activity is considered to be nil." A careful reading of these statements indicates that Dr. Kooiker found that Hassler's mental impairments (hypochondriacal neurosis and passive aggressive personality) are enhanced by rationalizations and by an official, "outside" corroboration (through the company disability rating) of the patient's own view of himself as physically sick. The result is a total inability to engage in significant gainful activity.

The Secretary may consider expert medical opinion regarding the claimant's ability to engage in any substantial gainful activity although such evidence, in itself, is not binding upon the Secretary. Colwell v. Gardner, 386 F.2d 56, 72 (6th Cir. 1967); Teeter v. Flemming, 270 F.2d 871, 874 (7th Cir. 1959). Moreover, where two or more experts disagree in their opinions of the claimant's disability, it is normally for the Secretary, and not the courts, to resolve these conflicts. Cyrus v. Celebrezze, 341 F.2d 192, 195 (4th Cir. 1965).

---

the claimant might have a psychological overlay." Dr. Engel actually reported, as noted hereinbefore, that "[t]here is a tremendous amount of psychological overlay."

7. We are not unmindful of a general reluctance on the part of physicians to evaluate either physical or mental disabilities in percentage terms. The inherent difficulty of so doing is illustrated in the present case. Two inches sliced off the top of a six foot person's head would be percentagewise less than 3% of the person as a whole but would no doubt be fatal in its consequences to that person. It is for that reason that we place primary reliance not on an estimated percentage of impairment but on the culmination of the evaluation of disability as it is contained in the prognosis. The Secretary's decision ignores this crucial, and in our opinion, controlling portion of Dr. Kooiker's report.

However, the Secretary may not arbitrarily choose to ignore uncontroverted medical testimony. Colwell v. Gardner, *supra,* 386 F.2d at 72. Nor may he rely on one expert "to the disregard of overwhelming evidence to the contrary." Cyrus v. Celebrezze, *supra,* 341 F.2d at 195.

Likewise, the Secretary may not rely on a portion of an expert's report where a fair reading of the entire report indicates that the expert reached a conclusion contrary to that asserted by the Secretary.

In considering the present appeal we do not have a question of weighing conflicting expert opinions,[8] which would be the province of the administrative agency. Here we know the expert upon whom reliance was placed. However, that expert's opinion, when read in its entirety, indicates that Hassler is disabled within the meaning of the Act. The Secretary's contrary conclusion was based upon a misinterpretation of the report upon which he relied.

We cannot agree with the district court's interpretation of Dr. Kooiker's prognosis as being a statement that plaintiff "does not intend to work and is totally unwilling to recognize why." The very essence of the report, culminating in the prognosis, is that Hassler's mental condition precluded his recognizing why he was abstaining from work.[9] Any other interpretation must be predicated upon a malingering basis which has been excluded as a factor.

That Hassler cannot return to gainful activity may well be partially attributable to the state of the civilization in which we live. We must look, however, at the case in that context and not in that of a primitive society.

Since there was no substantial evidence to counter Dr. Kooiker's prognosis of total disability, the Secretary's decision cannot stand. Teeter v. Flemming, *supra,* 270 F.2d at 874.[10]

The judgment is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

---

8. On this appeal, the Secretary stated in his brief in referring to the possibility of a conflict between Dr. Coursey's statement and Dr. Kooiker's diagnosis, that "the Secretary was amply justified in resolving that conflict by relying upon the diagnosis of the psychiatric specialist, which was based upon his own thorough examination and tests, and upon the reports of examinations by two specialists in psychology."

9. Dr. Kooiker also noted that psychiatric treatment would be useless in Hassler's case: "The patient does not see himself as having personality or emotional problems of any sort. Consequently, the offer of psychiatric help and support would be largely an empty gesture to which the patient would undoubtedly be unreceptive."

10. Hassler also argued, on appeal, that the Secretary, having found Hassler to be moderately disabled, failed to describe sufficiently the jobs which the claimant could perform. Since we find that the evidence indicates that Hassler was wholly disabled, we need not reach this second issue.