**Ignatius J. KLUG, Appellant,**

**v.**

**Casper W. WEINBERGER, Secretary of Health, Education and Welfare, Appellee.**

**No. 74–1974.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 28, 1975.

Decided April 15, 1975.

Thomas Wolf, Rochester, Minn., for appellant.

Robert G. Renner, U. S. Atty., Des Moines, Iowa, for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an action under 42 U.S.C. § 405(g) for disability benefits alleged to be due Ignatius J. Klug under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. Klug's claim was refused by the Social Security Administration, and after he had exhausted all of his administrative remedies, including a hearing before an administrative law judge and an adverse decision from the Appeals Council, he brought this action in the district court. Both Klug and the Secretary moved for summary judgment, and the court granted it for the Secretary. We reverse and remand with directions to enter judgment for Klug.

Klug claims that he suffers from continuing severe headaches which started occurring after October 13, 1970, when a rock hit him just above his right ear and knocked him out for a short period. These headaches allegedly keep him from engaging in an occupation, since any exertion or rough movement increases their intensity. The administrative law judge, whose findings were adopted by the Appeals Council, found that Klug was not suffering from a disability as that word is defined in section 223(d) of the Act, 42 U.S.C. § 423(d). Klug challenges this finding; and the issue is,

therefore, whether or not Klug has a disability as defined by the statute.[1]

This Court originally set out the legal standards to be used in this type of case in Celebrezze v. Bolas, 316 F.2d 498, 500–501 (8th Cir. 1963), and recently reiterated them in Garrett v. Richardson, 471 F.2d 598, 599–600 (8th Cir. 1972). Those standards are:

(a) the claimant has the burden of establishing his claim; (b) the Act is remedial and is to be construed liberally; (c) the Secretary's findings and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence; (d) substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (e) it must be based on the record as a whole; (f) the determination of the presence of substantial evidence is to be made on a case-to-case basis; (g) where the evidence is conflicting it is for the Appeals Council on behalf of the Secretary to resolve those conflicts; (h) the statutory definition of disability imposes a three-fold requirement (1) that there be a medically determinable physical or mental impairment which can be expected to [result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months], (2) that there be an inability to engage in any substantial gainful activity, and (3) that the inability be by reason of the impairment; (i) such substantial gainful activity is that which is both substantial and gainful and within the

---

1. Section 223(d) of the Act, 42 U.S.C. § 423(d), provides:

(d)(1) The term "disability" means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ..
(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not

only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

claimant's capability, realistically judged by his education, training, and experience; (j) the emphasis is on the particular claimant's capabilities and on what is reasonably possible, not on what is conceivable; and (k) it is not the duty or the burden of the Secretary to find a specific employer and job for the claimant but, instead, some effort and some ingenuity within the range of the claimant's capacity remains for him to exercise. (Footnote omitted.)

Of special significance to the instant case is the test regarding the three-fold requirement for a determination of disability:

(1) a medically determinable physical or mental impairment which has or will last at least twelve months, (2) inability to engage in any substantial gainful activity, and (3) the inability must be by reason of the impairment.

Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir. 1974).

The administrative law judge found that Klug suffers an actual impairment in the form of "a headache condition due to psychogenic factors." Likewise, there is no dispute over the fact that if Klug is unable to engage in any substantial gainful activity, it is because of the headaches. Thus, requirements (1) and (3) have been fulfilled. However, the administrative law judge also found that Klug's impairment is not of such a "degree of severity as to substantially reduce his capacity to perform 'significant functions'." Therefore, he held that Klug did not meet requirement (2) for a determination of disability.

The focus of our inquiry, then, is whether there is substantial evidence in the record as a whole to support this latter finding. In the context of the Social Security Act substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting from Consolidated Edison Co. v.

N.L.R.B., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). And in making this inquiry we are mindful that, while we are not to try the claim de novo, neither should we abdicate our function to carefully scrutinize the entire record in conducting the review. Yawitz v. Weinberger, supra, 498 F.2d at 957; Ainsworth v. Finch, 437 F.2d 446, 447 (9th Cir. 1971).

Klug, born in 1919, was 52 years of age at the time of the hearing. He is married, has children, and his wife is employed outside the home. Klug quit school in the eighth grade when he was 14. Since that time he has worked as a farmhand, a maintenance man in a state park and a heavy equipment operator.

Klug's injury occurred in October, 1970, when he was working as a caterpillar tractor operator at a gravel pit. Apparently he had gotten off his tractor to move a rock which was in his path when another rock fell out of the bucket on the machine and hit him just above the right ear. He was knocked unconscious, was taken to a hospital, treated and released. The severe headache started shortly after that, emanating from the spot above his ear where he had been hit. Klug attempted to return to work for a few days after the accident. However, the headaches became so severe that he could neither concentrate nor focus his eyes. Finally his doctor advised him to not work, and he has not done so since.

The medical evidence reveals that neither the physician who has treated Klug locally nor the doctors who have examined him at the Mayo Clinic have found any organic physiological cause for the headaches. However, Dr. Robert M. Morse, a staff psychiatrist at the Mayo Clinic, examined Klug in September, 1971, and testified at the hearing to the effect that the headaches were psychological in origin and that they were unconscious phenomena caused primarily by anxiety. Dr. Morse stated that his clinical impression was that Klug had a traumatic neurosis and that there was evidence of depression, pessimism, and

thoughts that life was not worth living. Further, and importantly, Dr. Morse testified that Klug's physical complaints were real and that he does suffer head pain. Also, tests conducted at the Mayo Clinic indicated that Klug is a neurotic type of individual and not a malingerer. In short, he is not consciously manufacturing the headaches in order to avoid having to work. Based on his examination and the various test results Dr. Morse was of the opinion that Klug was disabled from working because of its effect upon the headaches in increasing their intensity.

After the administrative law judge rendered his decision in April, 1972, Dr. Morse sent a letter dated August 1, 1972, to Klug's attorney. This letter became a part of the administrative record and was considered by the Appeals Council in its review of the case. This letter confirmed Dr. Morse's prior evaluation of Klug's headache problem. It reveals that Klug was treated from February 21 through March 10, 1972, at the Intensive Psychotherapy Center of the Mayo Clinic, but there was "little improvement in this situation." Dr. Morse reported that he had exhausted all the measures he was aware of and had been unable to relieve Klug's headache and neurotic problems or to "rehabilitate him to substantial gainful employment." He concluded that after the failure of the intensive treatment "this is even more evidence then for significant and probably permanent disability as a result of the head injury." The doctor felt that further efforts at rehabilitation would "probably meet with failure."

Klug himself testified with regard to the severity of the headaches and their disabling effect that he had a headache virtually all the time; that when he moves around or moves his hands they become worse; that he wakes up at night with headaches; that no medication he has taken has given significant relief from the pain; that riding on rough roads aggravates the headaches; and that if he is quiet and rests the headaches are not so bad. He did state, however, that he drives or walks a few blocks every day to pick up mail and purchase groceries; that he drives around 15 miles every week to visit his daughter; that he attends church around three times a month; and that every evening before supper he visits a tavern for a beer and stays and socializes for about an hour. Klug, of course, considers the headaches disabling.

Mrs. Ruth Klug testified and corroborated her husband's testimony as to his inability to work around the house for any extended period of time. She also stated that he sometimes gets up at night and that he has become bored and somewhat listless since the onset of the headaches.

There was no evidence from a vocational expert and no indication in the record of any type of substantial gainful activity in which Klug might engage given his impairment. Therefore, the only conclusion which the administrative law judge could have reached was that Klug could continue to perform his old job as a heavy equipment operator. Otherwise the decision would be in conflict with the majority rule that

> once a claimant demonstrates that his impairment is so severe as to preclude him from performing his former work, the burden shifts to the Secretary to prove that there is some other kind of substantial gainful employment which the claimant could perform.

Timmerman v. Weinberger, 510 F.2d 439, 443 (8th Cir. 1975). See Stark v. Weinberger, 497 F.2d 1092, 1097–1098 (7th Cir. 1974).

■ However, the foregoing review of the record reveals absolutely no substantial evidence to support such a conclusion regarding Klug's ability to perform at his old job. All the evidence from Dr. Morse points to a psychosomatic impairment which is totally disabling. And, of course, the Social Security Act defines "disability" in terms of a mental, as well as a physical, impairment. Social Security Act § 223(d)(1)(A); 42 U.S.C. § 423(d)(1)(A). Additionally, all the testimony of Klug and his wife indicates

that Klug would be unable to resume his old occupation.

The administrative law judge chose, however, to ignore this overwhelming evidence and concentrated instead on two factors he thought important. First, he stressed that Klug is not disabled from engaging in substantial gainful activities because he is capable of driving and walking short distances, can carry packages and is capable of socializing. This Court rejected this type of reasoning in a case very similar to the instant one, Yawitz v. Weinberger, *supra*, 498 F.2d at 960. *See* Timmerman v. Weinberger, *supra*, 510 F.2d at 442. As in *Yawitz*, the administrative law judge's emphasis on this evidence of mobility totally ignores all of the other evidence in the record regarding the effect of such activity on Klug's headaches. When such reliance has been placed on one portion of the record to the disregard of overwhelming evidence to the contrary, the case must be decided against the Secretary. Yawitz v. Weinberger, *supra*, 498 F.2d at 960; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).

Second, the administrative law judge relied heavily on the early medical reports of physicians who had examined Klug for a physiological cause for the headaches. However, these doctors were not diagnosing the headaches in terms of a mental impairment, and their conclusions that there was no physical reason Klug could not return to his job were based solely on the negative organic findings. Later, when a psychological basis for the headaches was found these earlier medical conclusions lost their validity and should not have been considered. The administrative law judge's reliance on them is misplaced and conflicts with his own statement that he "recognizes that the negative organic situation does not rule out a psychological condition."

The expert medical testimony of Dr. Morse was, therefore, uncontroverted by substantial evidence; and the Secretary may not arbitrarily choose to ignore it. Hassler v. Weinberger, 502 F.2d 172, 178 (7th Cir. 1974). Since there was no substantial evidence to counter Dr. Morse's prognosis of total disability, the Secretary's decision cannot stand. *Id.*

The appellant Klug met his burden of proof in the administrative proceedings and established that he was disabled within the meaning of the Social Security Act. There is no substantial evidence to support the denial of disability benefits. Therefore, we reverse the judgment of the district court and remand this case with directions to grant summary judgment for the plaintiff.

BRIGHT, Circuit Judge (dissenting):

This is a close case for the factfinder. He is called upon to evaluate appellant's purely subjective symptoms of acute recurring headaches and his assertion that he cannot work. Medical testimony supports his claim of inability to work, but this testimony rests solely upon his subjective complaints and not upon any organic cause.

Here, the hearing examiner (now administrative judge) weighed this evidence of inability to work against appellant's admissions that he could drive a car, carry groceries, do some shopping, assist in the preparation of meals, and, for an hour each day, socialize with his friends at the local bar.

On this record, I would hold that the determination of the hearing examiner, as approved by the appeals council, denying the claim for disability benefits and standing as the final administrative decision in this case, rests upon substantial evidence. Where evidence of disability is highly subjective, as it is in this case, we should readily defer to the conclusions of the factfinder unless they lack support in the record. *See* Mark v. Celebrezze, 348 F.2d 289, 292–93 (9th Cir. 1965). The hearing examiner stands in a far better position than we do to evaluate, by viewing and hearing the claimant and other witnesses, the merit or lack of merit of a claim founded upon such evidence. Although the examiner, based upon the evidence before him, might val-

idly have drawn an inference different from that which he did, we cannot, as a reviewing court, vacate his decision only because we disagree with his inferences from the facts. Northwest Bancorporation v. Board of Governors, 303 F.2d 832, 840 (8th Cir. 1962).

In this case, as distinguished from Yawitz v. Weinberger, 498 F.2d 956 (8th Cir. 1974), the claimant has made no effort to work, except for a few days shortly after receiving the relatively minor head injury on October 13, 1970, which allegedly produced his recurring (functional) headaches. In *Yawitz*, the claimant, although he had suffered migraine headaches for many years, continued to work until their increasing severity forced him to stop all gainful employment. *Id.* at 960–61. Thus, *Yawitz* does not compel the conclusion that the claimant in this case is also entitled to benefits.

The district court affirmed the hearing examiner's findings with the following observations:

The record as compiled by the hearing examiner and as expanded before the Appeals Council is comprehensive —including, in addition to medical reports and opinions, testimony and subjective evidence of pain, and work experience and history of the applicant. It is within the province of the hearing examiner to apply his experience and judgment in weighing the testimony of experts and to draw fair and reasonable conclusions from the evidence. We note also that a doctor's conclusion that a patient is or is not "disabled" is not necessarily controlling on the Social Security Administration. *See, e.g.,* Laws v. Celebreeze [sic], 368 F.2d 640 (4th Cir. 1966); Moon v. Richardson, 345 F.Supp. 1182 (W.D.Va.1972). Having considered the files, records, and memoranda of counsel, the Court finds that the Secretary's decision is based on substantial evidence and is therefore conclusive.

The hearing examiner's analysis of the evidence, in my view, demonstrates that his decision rested upon an adequate evidentiary basis:

"The evaluation of the medical evidence in the record should be directed primarily to determining, insofar as possible, the precise degree of function loss or restrictions that results from the claimant's physical impairments. In other words, it is the extent of limitation of his ability to engage in physical activity, such as sitting, walking, reaching, manipulations, etcetera, that determine the true severity of his impairment, and it is only through an assessment of these capacities that a meaningful decision can be made with respect to the ability to engage in substantial gainful activity.

"The basic inquiry in this case is the severity of the condition of the claimant's headaches under the pertinent provisions of the Social Security Act and Regulations. In determining whether his impairment has rendered him unable to engage in any substantial gainful activity, primary consideration must be given as to the severity of this impairment as evidenced by the medical facts, and by the extent of the handicap imposed upon him.

"§ 404.1502(b), Regulations No. 4; 20 CFR 404.1502(b) states, in pertinent part, that where a claimant is prevented from engaging in any substantial gainful activity by reason of a physical or mental impairment or impairments which are of such severity, i.e., result in such lack of ability to perform significant functions as moving about, handling objects, hearing, speaking, reasoning, and understanding, that he is not only unable to do his previous work or work commensurate with his previous work in amount of earnings and utilization of capacities, but cannot considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, then this conclusion warrants a finding of 'disability' under this section.

"Section 223(d)(3) of the Social Security Act and § 404.1501(c), Regulations No. 4; 20 CFR 404.1501(c) in defining "impairment" provides that a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which

are demonstrable by medically accepta-
ble clinical and laboratory diagnostic
techniques. The Regulation [Section
404.1501(c)] further provides that state-
ments of the claimant, *including his own
description of his own impairment
(symptoms) are, alone, insufficient to es-
tablish the presence of a physical or
mental impairment.* (Emphasis supplied)

"Medical reports indicate that claimant
has no organic cause for his problem.
The Hearing Examiner recognizes that
the negative organic situation does not
rule out a psychological condition. The
medical evidence indicates that claimant
has a post-traumatic disorder with head-
aches and that he is suffering from a
post-traumatic neurosis, which was stat-
ed by Dr. Morse, Mayo Clinic, psychia-
trist, who testified on behalf of claimant,
to be moderate in degree and which
more than likely was causing the head-
aches which he alleged.

"Dr. Morse, Mayo Clinic psychiatrist,
examined claimant, at most for two
hours, and diagnosed him as having a
neurotic reaction, which was not a pure
neurotic reaction, and there was some
evidence of depression, pessimisim [sic],
and thoughts that life was not worth
living. He also noted claimant had some
indication of a personality disorder. His
diagnosis was post-traumatic neurosis,
and that claimant's problem could be
caused by his emotional or psychological
difficulties which were a result of his
head injury, even though an organic
cause was ruled out. He further stated
claimant's physical complaints were real
and he suffered head pains which were
an unconscious phenomena, more a prod-
uct of anxiety, and that his economic
position may be a contributing cause to
his discouragement and pessimisim [sic]
and a basic reason for his lack of self-es-
teem. He also stated that claimant was
totally disabled and could not return to
the type of work he was doing and
would have to do something else; that
his prognosis was guarded, but with
treatment could be reemployed at anoth-
er type of job; and with his genuine
desire to return to work and receiving of
professional guidance, his chances were

reasonably good he could return to gain-
ful employment. Dr. Morse, in a letter
dated November 2, 1971, stated claimant
had a mild to moderate depression and
anxiety.

"There is no doubt that disability un-
der the Act can result from mental, as
well as a physical impairment. Subjec-
tive symptoms of pain are a significant
factor to be weighed in determining
whether a 'disability' exists as defined in
the Act. The Hearing Examiner recog-
nizes that pain, such as that resulting
from headaches, due to psychogenic fac-
tors, can be real to claimant and may be
so real and severe as to result in actual
disability to engage in performing sub-
stantial gainful activity. The problem
which arises in this case is the difficulty
of disproving by evidence a claimant's
subjective statement of inability to work
because of headaches, and it is necessary
to determine the truthfulness of the alle-
gations of subjective pain.

Even considering only the claimant's
subjective headache complaints, the evi-
dence does not establish, in the opinion
of the Hearing Examiner, that his dis-
comfort has resulted in a severe func-
tional limitation. Despite claimant's
headaches, he has been able to continue
to drive, can walk five to six blocks and
back without distress, sitting doesn't
bother him so much, he can stand com-
fortably about an hour, and has no trou-
ble bending or kneeling. He testified he
either drives or walks five to six blocks
daily to get his mail, does some shopping
daily, drives 15 miles once a week to
Winona, Minnesota, to do other shop-
ping, and visits his daughter (15 miles
away) about once a month. He has no
difficulty with any of his extremities.

Furthermore, every day before supper,
he visits a local tavern where he social-
izes for about an hour or more. It was
on such an occasion that claimant's
'black eye' incident occurred about which
a Mayo Clinic neurologist reported claim-
ant told him 'he had become drunk one
night and "got bumped" ', and he could
not remember what happened since he
had been drinking heavily.

"Claimant's treating neurologist at the Mayo Clinic, Dr. Heise, stated on September 2, 1971, that the prescribed analygesics [sic] were giving him some relief, that there was no worsening of his condition, and in his opinion, claimant did not have a true vertigo. He was also of the opinion that claimant had no restrictions and he was advised to try all types of work. Dr. Morse also was of the opinion that with guidance and treatment claimant could return to some gainful employment.

"The Hearing Examiner recognizes that the intent of the Act is to ameliorate some of the rigors of life and the Act must be liberally construed, but this does not require disability benefits must be awarded whenever there is a subjective showing one cannot work because he hurts. The Hearing Examiner has evaluated the subjective symptoms alleged by claimant with due consideration for credibility, motivation, and medical evidence of impairment and the conclusion of Dr. Morse that claimant is disabled [whose conclusion is not necessarily controlling on the Social Security Administration] and finds that claimant has failed to establish the headaches of which he complains are so disabling, or of such severity, that he has a severe functional limitation that will preclude all work activity.

"A review of the medical evidence of record shows that such data does not provide support for claimant's complaints with regard to the severity of his impairment. The medical evidence of record does not disclose the presence of any severely unremedial disabling impairment. There are no medical findings which would establish the presence of a serious functional loss which would preclude all types of work activity.

"The mere presence of a disease or dysfunction does not automatically entitle a claimant to disability benefits. A claimant must show that the impairment is of such severity that his residual functional capacity is so limited as to continuously preclude him from engaging in any type of substantial gainful activity. Although a physical impairment may restrict or diminish a person's work capacities, it is not necessarily true this impairment always severely limits occupational adapatability [sic] and usefulness to such a degree as to be equated to an inability to engage in substantial gainful activity.

"Claimant has not met the burden of showing that he was unable to engage in substantial gainful activity continuously from October 13, 1970, his alleged date of onset, because of anatomical, physiological, or psychological impairment which could be shown by clinical and laboratory diagnostic techniques to so restrict his ability to move about, handle objects, see, hear, reason, and understand, that he could not engage in any substantial gainful activity. The preponderance of the medical evidence herein fails to establish that claimant has an impairment of sufficient severity and duration so as to constitute a 'disability' within the meaning of the Law during the alleged period.

"Since medical evidence in this case justifies a finding that the claimant was not under a 'disability' at any time when he met the earnings requirements of the Act for disability purposes, it is not necessary for the Hearing Examiner to determine what type of employment the claimant was capable of engaging in, and what employment opportunities were available for an individual with the claimant's impairment. In other words, in this case there is no substantial, probative evidence to support a conclusion that the claimant was unable to engage in work of a substantial gainful nature at all times when he met the earnings requirements of the Act." [Brackets and emphasis in original.]

In light of our limited review responsibilities in cases of this kind, I would affirm.