**Helen FILLOU, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 84 C 5516.**

United States District Court, N.D. Illinois, E.D.

May 9, 1985.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

This is an action for judicial review of a final determination by defendant, Secretary of Health and Human Services (the "Secretary"), that plaintiff, Helen Fillou, is not entitled to a period of disability and disability insurance benefits pursuant to Title II, sections 216(i) and 223 of the Social Security Act (the "Act"), 42 U.S.C. §§ 416(i), 423.

Plaintiff filed applications for a period of disability and disability insurance benefits, and for Supplemental Security Income ("SSI") under Title XVI of the Act, on August 24, 1982, alleging that she became disabled and unable to work on October 2, 1977, at the age of 38. The applications were denied initially and upon reconsideration. Plaintiff made a timely request for an administrative hearing, and on August 24, 1983, she appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo.

In a decision dated December 3, 1983, the ALJ found that plaintiff became "disabled" within the meaning of the Act on August 24, 1982, approximately five months after the expiration of her insurance coverage for disability benefits (insured status). Thus, he ruled that Fillou was entitled to SSI benefits, contingent upon her meeting the non-disability requirements for SSI, but he denied her application for disability benefits. On May 16, 1983, the decision of the ALJ became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review.

Presently before this Court are the parties' cross-motions for summary judgment. In addition to seeking reversal of the defendant's final decision, plaintiff requests an award of disability benefits based upon a period of disability commencing October 2, 1977. For the reasons stated below,

defendant's motion for summary judgment is denied, and plaintiff's motion for summary judgment is granted as to reversal of the Secretary's denial of disability benefits.

## I. Applicable Law

In order to qualify for disability insurance benefits, a claimant must meet the insured status requirements, be under age 65, and be under a 'disability' as defined in the Act. 42 U.S.C. §§ 416(i), 423.

The term "disability" is defined in section 223 as:

\* \* \* \* \* \*

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

\* \* \* \* \* \*

(2) For purposes of paragraphs (1)(A)

(A) an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

A claimant's insured status continues as long as she meets the minimum earnings requirements under Title II. It is well established that the claimant must have been disabled within the meaning of the Act on or before the expiration of her insured status in order to qualify for disability benefits.

There is no insured status requirement, however, for SSI benefits. In order to qualify for SSI benefits on the basis of disability under section 1602 for the Act, 42 U.S.C. § 1381a, a claimant must be a "disabled individual" and meet certain need requirements. The definition of "disabled individual" found in section 1614(a), 42 U.S.C. § 1382c(a), is virtually identical to the section 223 definition quoted above.

In the instant case, the ALJ found that plaintiff Fillou's last day of insurance coverage for disability benefits was March 31, 1982, and that prior to that date, her physical and mental impairments were not severe. He further decided that she has been under a "disability" as defined in the Act since August 24, 1982. In his December 3, 1983 decision, the ALJ specifically found that as of August 24, 1982, Fillou did not retain the residual functional capacity to understand, remember, or carry out simple instructions, to perform simple, routine, repetitive tasks at a competitive rate, or to respond appropriately to supervisors, co-workers, or work pressures in a routine work setting. The ALJ then considered her age, education, and vocational background, and concluded that there are no jobs existing in significant numbers in the national economy which she would be able to perform.

The medical evidence shows, and the Secretary concedes, that the plaintiff has suffered from a mental impairment, chronic obstructive pulmonary disease, and osteoarthritis, among other ailments, since before her insured status expired. The Secretary maintains, however, that these impairments, whether singly or in combination, were not severe enough to be disabling until after March 31, 1982.

Judicial review of the Secretary's determinations is limited to a determination of whether those findings are supported by "substantial evidence" based on the record as a whole. *Rhoderick v. Heckler*, 737 F.2d 714 (7th Cir.1984). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Given the decision of the ALJ, the question for review in the instant case is whether the ALJ's finding that plaintiff did not become "disabled" until August 24, 1982, after the expiration of her insured status, is supported by "substantial evidence." This Court, after an extensive and careful review of the record

as presented to the ALJ finds that his conclusion was not so supported.

## II. Facts

Helen Fillou is a forty-five year old woman, originally from Greece, who is divorced and lives with her two sons in Chicago, Illinois. She last worked as a press operator, from September, 1969 to October 2, 1977.

Plaintiff's medical records show a series of hospitalizations and treatment for both her mental and physical afflictions. Plaintiff has a history of chronic obstructive pulmonary disease; she was hospitalized for acute exacerbation of that condition on two separate occasions, in February, 1981 and in June, 1982.

The medical evidence also indicates that plaintiff has a history of depression dating back to 1975. She was hospitalized twice in 1975 at Chicago Lakeside Hospital; her diagnosis was psychoncurosis with dissociative and depressive features. Her first admission followed an episode of agitated behavior at work, including banging her head against the wall. On the second occasion, she was brought in by her family following a sequence of uncontrolled behavior, culminating in plaintiff taking off her clothes and running outside. Plaintiff subsequently returned to work, but she alleges in her disability insurance application that her mental condition caused her to miss so much work that she was forced to quit her job on October 2, 1977.

There is no evidence of further psychiatric treatment until October, 1981, when plaintiff was hospitalized at Chicago Reed Mental Health Center (Chicago Reed') because she was depressed and suicidal. According to her history, plaintiff frequently engaged in uncontrolled behavior such as crying, screaming, fighting and throwing things, and she suffered delusions of meeting with God and the Virgin Mary. Plaintiff's final diagnosis was dysthymic disorder, which requires symptomatology lasting at least two years prior to the diagnosis, and histrionic personality disorder.

Shortly after the expiration of plaintiff's insured status, on May 26, 1982, she was readmitted to Chicago Reed because of alcohol induced delusions. She demanded to be discharged on June 10, 1982. The final diagnosis was alcohol induced delirium, dysthymic disorder, and hypertension; her prognosis was poor.

Finally, on two occasions in 1983, plaintiff was brought by the police to Ravenswood Hospital Medical Center ("Ravenswood"): she was depressed, disoriented, and suicidal. The final diagnosis on May 7, 1982, by her treating psychiatrist, Dr. Papas, was major depression, recurrent, with melancholic; atypical impulse control disorder; mixed personality disorder; emphysema; and degenerative arthritis.

The record also contains a number of significant medical reports in addition to the hospital records. Dr. George L. Housakos, who has been plaintiff's treating physician since June, 1982, gave his opinion that plaintiff has been totally disabled since 1979 due to her lung and mental impairments. Dr. Richard Brady, an examining psychiatrist for defendant, while suspecting malingering, diagnosed possible major depression, recurrent, with possible mood-congruent psychotic features. A psychiatric review by Dr. Albert Kwedar, a Social Security staff consultant, gave plaintiff a total psychiatric impairment rating of "4." A "4" indicates: "Symptom, Sign, Behavior or Lab finding is present to a moderately severe degree and very significantly limits ability to perform basic work-related activities." Significantly, Dr. Kwedar expressly noted that this same evaluation would apply equally for March, 1982.

Furthermore, the ALJ was also presented with testimony at the hearing. It is apparent from the record that plaintiff had a great deal of difficulty testifying at the hearing: she was unable to speak loudly enough to be audible and she cried during much of the proceeding. She was unable to remember where she worked, when she came to the United States, or how many years she went to school. She did testify to her poor memory, emphysema, weak heart, back, knee and feet pain, and that

she can lift about ten pounds, stand for five minutes and walk short distances.

Anita Vasquez, a neighbor, testified that she has known the plaintiff for approximately one and a half years. During that period, she has found the plaintiff incoherent, outrageously abusive to her family, herself, and others, suicidal, and foregetful. Mrs. Vasquez also testified that plaintiff requires help with cooking and the laundry, has pain doing simple household tasks, forgets to take her medications, and frequently loses her temper. She further stated that plaintiff is unable to go out alone, and that she never leaves her home, except to go to church about once every two months or to pick up a welfare check. Mrs. Vasquez reported observing plaintiff walk up steps one at a time due to shortness of breath.

Additionally, Bill Darras, a cousin of the plaintiff, testified that plaintiff had to stop working in 1977 after becoming sick. He is aware of five suicide attempts. Mr. Darras further informed the ALJ that plaintiff, a native of Greece, is basically illiterate in English.

### III. Discussion

In his December 13, 1983 opinion, the ALJ offered several justifications for his decision that plaintiff was not disabled until August 24, 1982. He noted that although plaintiff did have a history of emotional problems prior to the date she was last insured, March 31, 1982, she was not under ongoing psychiatric care and she had not undergone numerous, long-term psychiatric hospitalizations. The ALJ characterized her psychiatric medical history while insured as episodic, and found no indication that her emotional condition significantly affected her ability to perform basic work-related activities for a continuous 12-month period. According to the ALJ, the evidence shows that plaintiff's emotional condition deteriorated rapidly following her May, 1982 hospitalization. He claimed that plaintiff's records at Chicago Road and Ravenswood, and evaluations by her treating psychiatrist, Dr. Papas, show that since August 24, 1982, plaintiff has been unable

to understand simple instructions or respond appropriately to co-workers and the customary pressures of the work place.

█ After an extensive review of the record, this Court finds that not only is the final decision of the Secretary unsupported by "substantial evidence," there exists no evidence to support a finding that plaintiff's mental impairments did not become severe and disabling until August 24, 1982.

First, there is nothing in the report of Dr. Papas, dated June 25, 1983, to indicate an onset date of August 24, 1982. The report details characteristics of a very seriously disturbed woman: plaintiff's reasoning, memory, and interpersonal relationships are very impaired by a pervasive depression and psychosis; she is unstable with explosive tendencies and an extremely low frustration tolerance level; she spends all her time at home, has multiple phobias, and does not go out unescorted; and she has attempted suicide at least five times. Dr. Papas' report nowhere indicates a particular onset date, but it certainly does suggest an individual who has been unable to function for a significant period of time.

Second, the ALJ stated that he relied on the records of plaintiff's hospitalizations at Chicago Road and Ravenswood to support his conclusion that plaintiff's mental condition became severe after her May, 1982 hospitalization but before August 24. He offers no reason for this reliance, and none is apparent.

The record of plaintiff's hospitalizations indicate instead that plaintiff's mental impairment became severe prior to March 31, 1982. She was hospitalized October 23–November 2, 1981 at Chicago Road Mental Health Center, because she was depressed, suicidal, and suffering from delusions. Her final diagnosis was dysthymic disorder and histrionic personality disorder with a prognosis of "fair." Plaintiff was again hospitalized at Chicago Reed May 26–June 10, 1982, shortly after her insured status expired. She was admitted because of alcoholic induced delusions and suicidal tendencies. Her final diagnosis was alcohol

induced delirium, dysthymic disorder, and hypertension.

■ Further, the ALJ's reliance on the fact that plaintiff's psychiatric treatment and hospitalizations were not continuous is misplaced. Symptom free intervals do not preclude a finding of disability with respect to mental impairments. *Johnson v. Secretary of Health, Education, and Welfare,* 679 F.2d 605 (6th Cir.1982). In *Johnson,* the Sixth Circuit reversed a finding that the claimant was not disabled at the time his insured status expired, where the claimant was hospitalized for mental illness only sixteen days after that date. *Id.* at 608. The court held that the fact that a claimant was released from a mental institution and off medication was not substantial medical evidence that the claimant's mental impairments were no longer severe.

■ Similarly, in *Parsons v. Heckler,* 739 F.2d 1334 (8th Cir.1984), where a claimant was diagnosed as having certain serious mental problems nine months before the date his insured status expired, and there were strong correlations between the psychological evaluations of claimant before and after the expiration date, the Eighth Circuit reversed the ALJ's conclusion that claimant was not disabled during his insured status. *Id.* at 1340–41.

As both Johnson and Parsons demonstrate, in order to obtain an accurate picture of the severity of the claimant's mental impairment while he is insured, courts look to psychiatric evaluations of claimants dating both before and after the insured status expiration. These cases also show that intervals where a claimant does not receive any type of psychiatric care are not to be regarded as substantial evidence of a less than severe mental impairment. In sum, the ALJ lacks any evidence for his conclusion that plaintiff's mental impairment reached the level of a disability between June and August of 1982.

In contrast, there is substantial evidence to indicate that plaintiff's mental condition was so severe as to significantly interfere with her ability to work before March 31, 1982. First, the two physicians who analyzed plaintiff's medical records in order to determine a disability onset date both concluded that plaintiff became disabled while she was still insured. The Social Security Administration's staff physician, Dr. Kwedar, concluded that in March, 1982, the plaintiff exhibited symptoms, signs, and behavior which very significantly limited her ability to perform basic work related activities. Dr. Housakos, a treating physician, has stated that plaintiff was disabled since at least 1979. The opinion of an examining physician is entitled to substantial weight, and explicit reasoning must be set forth in a decision which rejects the physician's conclusions. *Munks v. Heckler,* 580 F.Supp. 871, 873 (N.D.Ill.1984). Further, the Seventh Circuit has stated that the Secretary may not ignore uncontroverted medical evidence as to the nature and extent of a mental impairment. *Hassler v. Weinberger,* 502 F.2d 172 (7th Cir.1974).

In addition, the ALJ never analyzed the lay witnesses' testimony. Both Mrs. Valasquez and Mr. Darras testified that they have known the plaintiff since at least March, 1982, and each graphically described a severely disabled woman. Lay testimony is relevant to the issues of onset date and residual functional capacity for mental impairments, Social Security Ruling, 83–20, 83–16, and must be considered, *Munks,* 580 F.Supp. at 874.

### Conclusion

It appears from the record that the onset date of August 24, 1982 was arbitrarily selected by the ALJ. Uncontroverted medical evidence and lay testimony establish that Helen Fillou was under a 'disability' prior to the expiration of her insured status on March 31, 1984.

It is well established that if the record as presented to the ALJ contains substantial evidence supporting a finding that the claimant was disabled, then the district court may reverse the determination of the Secretary and enter an order granting disability benefits to the claimant. See, e.g., *Parsons,* 739 F.2d at 1341.

Fillou's demonstrated chronic depression and suicidal tendencies, as diagnosed on November 2, 1981, together with her uncontrollable, abusive behavior, multiple phobias, and faulty memory and reasoning ability, as corroborated by subsequent psychiatric evaluations and lay testimony, lead this Court to the conclusion that the ALJ erred in failing to find that Fillou had been disabled since before March 31, 1982, at the latest. Although there is some evidence indicating an onset date of as early as October 2, 1977, this Court finds there is substantial evidence supporting a finding that Fillou was disabled before March 31, 1982. Therefore, the determination of the Secretary denying disability benefits to Fillou is denied.

Summary judgment is granted in favor of plaintiff Fillou. Defendant's cross-motion for summary judgment is denied. Defendant is directed to award her disability benefits under 42 U.S.C. § 423.