Joe N. BURNS, Plaintiff,

v.

Caspar **WEINBERGER**, Secretary of Health, Education and Welfare of the United States of America, Defendant.

No. 20343–4.

United States District Court,
W. D. Missouri, W. D.

May 5, 1975.

Phillip L. Baker, C. William Kramer, Independence, Mo., for plaintiff.

Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

This is an action brought pursuant to the provisions of § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), in which plaintiff seeks a review of and reversal of a decision of the Secretary of Health, Education and Welfare denying his application for certain disability benefits. Plaintiff basically contends that the decision of the Secretary that he is not disabled within the meaning of the Social Security Act is not supported by substantial evidence. The Secretary asserts that the decision appealed from was not a final decision within the meaning of § 205(g), thereby denying this Court jurisdiction to hear this appeal, and that this action is barred by principles of administrative *res judicata*. The Secretary further contends that the decision of the Secretary was supported by substantial evidence. For the reasons set forth below, this Court has concluded that this action is not barred as suggested by the Secretary, and that the decisions of the Secretary denying benefits to the plaintiff must be reversed.

### *Background of the Controversy*

Plaintiff first filed an application for disability benefits on July 21, 1961, claiming that he was disabled due to conditions of chronic nervous anxiety, psoriasis, flat feet, vericose veins, and a "throat condition". This application was denied initially and upon reconsideration, where upon plaintiff requested and received a hearing on his application. On February 28, 1963, the written decision of the hearing examiner was issued, denying plaintiff's application.[1]

---

1. The Hearing Examiner found that the plaintiff, then 33 years of age, married and with seven children (ages 1½ to 9½), had not established that he was unable to engage in any substantial gainful activity, notwithstanding evidence that he was suffering from an anxiety reaction, coupled with depression and alcoholism. In this connection the hearing examiner noted that the plaintiff had held a number of jobs previous to his application for benefits and that, in the opinion of the hearing examiner, he could be rehabilitated should he really desire to solve his problems and seek employment. The hearing examiner further concluded that the evidence failed to establish that any of the conditions complained of by the plaintiff impaired his ability to engage in substantial gainful activity. ·

No appeal was taken from the decision of the hearing examiner.

Plaintiff's second application for disability benefits was filed on March 28, 1968. This application asserted that plaintiff was disabled due to "nerves" and that he had been disabled and unable to work since February 2, 1967 due to this condition. At the disability interview held on March 28, 1968, plaintiff told the interviewer that his nervous condition was much worse than it had been in 1961 at the time of his earlier application, and that he was unable to cope with any sort of stress situation. This second application was denied initially on November 18, 1968, and upon reconsideration on January 15, 1969. Plaintiff thereupon requested a hearing, but waived his right to appear personally at this hearing and requested that his application be considered by the hearing examiner on the basis of the total record before him, including certain medical evidence submitted in connection with this second application.

The evidence submitted to the hearing examiner in addition to the record of the proceedings in connection with the 1961 disability examination consisted of a short history of Mr. Burns' activities since the 1963 denial of his previous claim and medical reports of two psychiatrists who examined Mr. Burns. The nonmedical evidence establishes, as found by the hearing examiner, that since 1963 plaintiff has only worked on three occasions. From May of 1966 to July of that year he was employed at the Kansas City Star newspaper, but was discharged due to his "inability to meet production standards." He then went to work at the United States Post Office from July of 1966 until February of 1967, when he quit due to his nervous condition of which he complains in this case.

Plaintiff stated that he had to cease working because of his nervous condition on February 2, 1967 and that he has tried to go back to work, but has been unsuccessful.[2] Plaintiff had applied for and was receiving welfare payments from local authorities.

The medical evidence presented was that in February of 1967, soon after leaving the employ of the Post Office, Mr. Burns was admitted to the psychiatric unit of the Veterans Administration Hospital at Wadsworth, Kansas, complaining of tension, alcoholism, difficulties in his relationships with his wife, depression, and difficulty in keeping jobs because of an inability to cope with any type of pressure situation. At this time plaintiff was also contemplating suicide. The findings of the doctors at the psychiatric center were that the plaintiff functioned with hypochondriacal, hyteroid and compulsive defenses, and evidenced a passive-aggressive behavioral stance; that he was not a psychopath and showed no evidence of overt thought disorder; and that his hostility and depression were sometimes alleviated by his alchoholism. The diagnosis made was that the plaintiff suffered from an anxiety reaction, chronic, moderate, occurring in a personality trait disorder sometimes manifesting itself in alcoholism. Mr. Burns was discharged from the Veterans Administration Hospital on July 29, 1967 after failing to return to the hospital after leaves of absence to visit his families.

Subsequently, Mr. Burns began group therapy sessions at the Mental Hygiene Clinic at the Veterans Administration Hospital in Kansas City, Missouri. On March 21, 1968, James K. Loutzenhiser, M.D., a psychiatrist serving as Chief of the Mental Hygiene Clinic at the Kansas City Veterans Administration Hospital, and in charge of the group therapy sessions plaintiff was attending concluded that at that time Mr. Burns was

". . . a poor candidate for any type of training program and could not function successfully in any type of

---

2. Plaintiff worked for a short time as a bellboy in the fall of 1967, leaving this employment due to his "nervous condition."

work situation considering his recent psychiatric history of anxiety and depression."

Dr. Loutzenhiser reaffirmed this conclusion on May 23, 1968, after further observation, and diagnosed Mr. Burns' condition as of that date as "Chronic psychoneurotic anxiety reaction with depression."

Dr. Loutzenhiser then conducted a neuropsychiatric examination of the plaintiff and made his report of this examination on July 13, 1968. In this report Dr. Loutzenhiser reviews the plaintiff's history, and then indicates that his neurological examination found Mr. Burns to be within normal limits. Dr. Loutzenhiser's Mental Status Examination, however, found the plaintiff not to be within normal limits. The report notes that Mr. Burns made a clean, casual appearance; that he was cooperative, appeared oriented in all spheres and spoke clearly and coherently, had a fair memory, intact intellect and normal abstraction, and that he denied having hallucinations or delusions. It further notes that he had only fair insight; that his peer relationships are poor; that he is frequently depressed, to the extent of occasionally contemplating suicide. His major defense mechanisms were reported to be denial, repression and somatization of complaints. Dr. Loutzenhiser found his level of functioning, his social and economic adjustments and his reality testing all to be poor.

Dr. Loutzenhiser's conclusion of his Mental Status Examination was as follows:

"There is no evidence of chronic brain disease, nor of overt thought disorder. He is only functioning on a marginal level and is barely managing to remain out of the hospital. His responsibilities in life have just become too great for him and he is unable to cope with them. Apparently he has never worked very well under pressure, and has always required a great deal of extra time to accomplish anything. His personality background is the passive-dependent type."

The diagnosis made was "Chronic psychoneurotic anxiety reaction with depression" and "Chronic alcoholism". And, although believing that Mr. Burns was capable of handling his own benefit payments, Dr. Loutzenhiser concluded:

"His disability is total and permanent at the present time. He is unable to socialize well. He is unable to function in any type of a normal work setting. It is a struggle for him just to keep out of the hospital. Occasionally he feels like giving up and committing himself. His environmental problems are many. He requires a great deal of support and reassurance. He is not a good candidate for any type of vocational training at the present time. The chronicity of his condition points toward a pessimistic prognosis. My only recommendation at the present time is that he continue his group psychotherapy and his medication."

Mr. Burns was then afforded a consultative psychiatric examination by Richard M. Childs' M.D., a specialist in psychiatry and a Diplomate of the American Board of Psychiatry and Neurology. Dr. Childs' report, under date of December 18, 1968, found plaintiff's neurological status to be within normal limits. Dr. Childs' Mental Status Evaluation of the plaintiff found him to be pleasant and cooperative, with logical and coherent speech. Dr. Childs found no evidence of hallucinations, delusions, defective reality testing, psychosis or overt thought disorders. However, Dr. Childs did find the plaintiff to be an "inadequate, complaintive, and brittle man" who evidenced an extremely low self-esteem. Dr. Childs report concludes as follows:

"This man appears to be a character disorder with aspects of inadequate personality, passive dependent personality and passive-aggressive personality. There is also some tendencies to chronic alcoholism. He re-

acts badly to stress of any kind with the development of extreme tension, somatic and psychophysiological symptoms and anxiety with self-depreciatory trends. The pattern of failure over a long period of time and the present examination with its evidence of chronically impaired self-esteem and anxiety would indicate that he is effectively disabled from a regular employment.

"The prognosis is guarded in view of the unsatisfactory history and the lack of present personality resources. While he speaks of having a "five year plan" to improve and rehabilitate himself, especially with the help of his present therapy at the Veterans Administration Hospital, one finds it difficult to develop much confidence that he will be able to change. Nevertheless, these efforts should be encouraged.

"Psychiatric Diagnosis: Inadequate personality, with manifestations as noted (1) and Psychoneurotic anxiety reaction, chronic, with psychophysiological and somatic manifestations (2)."

The evidence further established, as the hearing examiner noted in his decision, that the Board of Veterans' Appeals on October 16, 1968, granted plaintiff a wartime service connected disability for psychoneurosis.

In his written decision on June 25, 1969, the hearing examiner denied plaintiff's application for disability benefits. In his decision, the hearing examiner first reviewed and summarized the evidence before him, evaluated that evidence, and then made his findings of fact and conclusions of law.

In his "Summary of Medical Evidence" in the decision, the hearing examiner reviews Dr. Loutzenhiser's report, and notes his conclusions, including his opinion that the plaintiff is totally disabled and completely unable to function in any normal work setting due to his psychiatric condition. In the review of Dr. Childs' report, the hearing examiner makes no mention of Dr. Childs' conclusion that the plaintiff is "effectively disabled from a regular employment".

The hearing examiner then makes his "Evaluation of the Evidence". In this section of his written decision no mention whatsoever is made of the report or conclusions of Dr. Loutzenhiser. Further, the hearing examiner does not include in his review and evaluation of Dr. Childs' report Dr. Childs' conclusion that the plaintiff is effectively disabled from any regular employment. The hearing examiner concludes this section of his decision as follows:

"Based upon the evidence in this case, it is the opinion of this Hearing Examiner that the claimant does have an anxiety situation and is at times depressed because of his inability to cope with his obligations as a husband and father of eight children, and possibly also because of economic difficulties. Apparently, based upon the evidence of record, he resorts to alcohol when the pressures of existence seem to build up. However, psychiatric examination revealed that he answered questions in a logical and coherent fashion, and there was no evidence of psychosis or disorder in this thinking. It was further revealed that he was not suffering from hallucinations or delusions and showed no evidence of defective reality testing. His neurological examinations appeared to be normal.

"It is the opinion of this Hearing Examiner that although the claimant may have a personality disorder and may suffer from anxiety and possible tendencies toward chronic alcoholism, that he does not have an impairment or impairments of such severity as to prevent him from engaging in any kind of substantial gainful activity. Therefore, it is the opinion of this Hearing Examiner that the claimant is not entitled to a period of disability or to disability insurance benefits under the Social Security Act."

The hearing examiner's formal findings of fact include that the plaintiff last met the earnings requirement of the Social Security Act on September 30, 1968, and that on that date the plaintiff had

". . . the following medically determinable mental impairments: Personality disorder with anxiety reaction but without psychosis or thinking disorder."

The hearing examiner further found that on September 30, 1968, the plaintiff did not have

". . . a combination of medically determinable physical or mental impairments which has lasted or can be expected to last for a continuous period of not less than 12 months which precludes his engagement in substantial gainful activity."

Having thus found that the plaintiff was not disabled within the meaning of § 223(d) of the Social Security Act, as amended, 42 U.S.C. § 423(d), the application was denied.

Plaintiff requested a review by the Appeals Council of the decision of the hearing examiner, and on September 12, 1969, he was informed by letter that the decision of the hearing examiner was affirmed. Plaintiff was also advised in this letter that he had the right to seek judicial review of the determination not to award him benefits within sixty days, pursuant to § 205(g) of the Act. No review action was filed within the time period.

Plaintiff's third application for disability benefits was filed on May 20, 1970, alleging that he was disabled due to "nerves (psychoneurosis)" beginning in February of 1967. This application was denied initially on August 21, 1970, and upon reconsideration on March 9, 1971, on the basis that no evidence had been submitted that would warrant any change on the decision made with respect to plaintiff's 1968 claim. Plaintiff requested a hearing and in a written decision under date of February 2, 1972, the hearing examiner concluded:

"The Hearing Examiner finds that the claimant has submitted no new evidence which is pertinent to the claimant's condition on or before September 30, 1968, which is the date the claimant last met the special earnings requirements. The Hearing Examiner finds there is no new evidence which would warrant opening the previous determinations.

"The request for hearing filed September 8, 1971 relates to matters that are res judicata. It is accordingly ordered that the request for hearing filed September 8, 1971 be and hereby is dismissed as provided in Code of Federal Regulations, Title 20, Chapter III, 404.937(a). The Determination of the Social Security Administration will continue to be effective."

Plaintiff thereupon requested the Appeals Council to set aside the previous decisions denying him benefits and dismissing his third application and to grant him a rehearing. Included with this request was a copy of a "Special Psychiatric Examination" of plaintiff by Dr. Loutzenhiser under date of January 21, 1972. Dr. Loutzenhiser's report reaches essentially the same conclusions reached in his 1968 report. On March 29, 1972 the Appeals Council denied plaintiff's request, reiterating that the June 25, 1969 decision of the hearing examiner constituted the final decision of the department.[3] Plaintiff thereafter filed this review action.

### Applicability of the Doctrine of Res Judicata

In pertinent part, § 205(g) of the Social Security Act, as amended 42 U.S.C. § 405(g), provides as follows:

"Any individual, after any final decision of the Secretary made after a

---

3. The record also shows that plaintiff entered the Veterans Administration Hospital on June 27, 1969 to be treated for "nervousness, tension, restlessness, and fears of suicide." His condition was diagnosed as "anxiety reaction with depression." Plaintiff left the hospital on September 2, 1969.

hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. . . ."

It is the Secretary's position that the final decision in this case within the meaning of § 205(g) is the decision of the Appeals Council on September 12, 1969 affirming the decision of the Hearing Examiner on June 25, 1969. The Secretary suggests that this decision became final by the failure of plaintiff to file within sixty days of that date an action seeking review of that decision in the appropriate federal district court. Therefore, the Secretary contends, dismissal of plaintiff's 1970 application for disability benefits was proper on grounds of *res judicata* pursuant to 20 C.F.R. § 404.937(a), which provides that the hearing examiner may, upon his own motion dismiss a hearing request:

> "Where there has been a previous determination or decision by the Secretary with respect to the rights of the same party on the same facts pertinent to the same issue or issues which has become final either by judicial affirmance or, without judicial consideration, upon the claimant's failure timely to request reconsideration, hearing, or review, or to commence a civil action with respect to such determination or decision . . . ."

Looking only at this section and the language of § 205(g) of the Act cited above it would appear that the Secretary's position should be sustained, and this action dismissed. However, an examination of the regulations dealing with reopening of previous determinations of hearing examiners or of the Appeals Council reveals that the Secretary's position cannot be sustained.

20 C.F.R. § 404.957 provides that an initial or reconsidered decision of the Social Security Administration, or a decision of a hearing examiner or of the Appeals Council *which is otherwise final* [4] may be reopened in the following pertinent circumstances:

> "(b) . . . within 4 years after the date of the notice of the initial determination . . . to the party to such determination, upon a finding of good cause for reopening such determination or decision, or
>
> "(c) At any time, when: . . .
>
> (8) Such initial or reconsidered determination or decision is unfavorable, in whole or in part, to the party thereto but only for the purpose of correcting clerical error or error on the face of the evidence on which such determination or decision was based."

As used in § 404.957(b), "good cause" for reopening a decision exists when

> "(a) New and material evidence is furnished after notice to the party to the initial determination;
>
> (b) A clerical error has been made in the computation or recomputation of benefits;
>
> (c) There is an error as to such determination or decision on the face of the evidence on which such determination or decision was based."

See 20 C.F.R. § 404.958.

The hearing examiner's decision relative to the 1970 application for benefits concluded that no new evidence had been submitted that would warrant any reopening of the decision concerning plaintiff's 1968 application for disability ben-

---

4. § 404.957 provides that such decisions "which [are] not otherwise final under § 404.908, § 404.916, § 404.940, or § 404.951" may be reopened under the provisions of this section. The regulations referred to provide that a decision of the Social Security Administration with regard to a claim for benefits is final unless proper review proceedings are instituted with respect to a particular decision.

efits. The Secretary argues that this determination, in view of the additional evidence submitted, clearly complies with the provisions of § 404.957(b) and § 404.958(a). Therefore, he asserts, the decision not to reopen the 1968 application for benefits was proper, and the 1969 decision of the Appeals Council affirming the hearing examiner's decision denying plaintiff benefits on his 1968 claim remains the final decision in this case.

However, neither the hearing examiner nor the Appeals Council considered whether the 1968 claim should be reopened due to "an error on the face of the evidence" on which the decision denying plaintiff's 1968 application was based, pursuant to § 404.957(c)(8).[5] In this regard, the critical question is, of course, what is meant by the phrase "error on the face of the evidence."

This question has been recently answered by the Court of Appeals. On April 11, 1975, the Eighth Circuit decided Lauritzen v. Weinberger, 514 F.2d 561 (8th Cir. 1975). In *Lauritzen* the court noted that the Social Security Claims Manual defines this phrase in the following manner:

" * * * An error on the face of the evidence exists where, on the basis of all the evidence in the file on which the determination or decision was based and any evidence of record anywhere in the Administration at the time such determination or decision was made, it is *clear* that the determination or decision was incorrect."

* * * * * *

"A determination or decision which was reasonable on the basis of the evidence in the file and the statute, regulations, instructions, precedents, etc., existing at the time the determination or decision was made, will not be reopened merely because there is a shift in the weight of the evidence, a different inference is now drawn from the evidence, a different rule of

law would not be applied, or the statute or regulations have been amended, unless such amendment specifically provides otherwise. * * * In such cases, there is no error on the face of the evidence on which the determination or decision was based (i.e., the 'record') which would permit reopening."

Lauritzen v. Weinberger, *supra,* at p. 563. And see Social Security Claims Manual, § 7015 (May, 1970). Noting this language, the Court held that a claim must be reopened under § 404.957 (c)(8) if an injustice has been done to a claimant, or if there is manifest error in the record. See Lauritzen v. Weinberger, *supra,* and cases cited therein. This court's task is therefore to examine the record before the Secretary to determine if such injustice or error was present in the decision to deny plaintiff's 1968 claim.

The June 25, 1969 decision of the hearing examiner properly found from the record that plaintiff last met the earning requirements of the Act on September 30, 1968. The question therefore became whether the plaintiff was disabled within the meaning of the Social Security Act on or before that date, as he claimed. § 223(d) of the Social Security Act, as amended, 42 U.S.C. § 423 (d) defines disability. It provides:

"(1) The term "disability" means—

(A) inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or

* * * * * *

(2) For purposes of paragraph (1) (A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of

---

5. The same test is provided by § 404.957(b) and § 404.958(c).

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. * * * "

▮ In order to meet this statutory definition, a claimant must satisfy three separate tests. First, he must have a medically determinable physical or mental impairment which can be expected to result in death or can be expected to or has lasted for a continuous period of at least twelve months. Second, he must be unable to engage in any substantial gainful activity. Third, the inability to engage in gainful activity must be the result of the impairment or impairments. Timmerman v. Weinberger, 510 F.2d 439 (8th Cir. 1975); Yawitz v. Weinberger, 498 F.2d 956 (8th Cir. 1974); Garrett v. Richardson, 471 F.2d 598 (8th Cir. 1972).

In this case the hearing examiner correctly found that on and before September 30, 1968 the plaintiff had a medically determinable mental impairment, to-wit: "personality disorder with anxiety reaction but without psychosis or thinking disorder." And, although not specifically noted by the hearing examiner in his decision, it is clear from the evidence that this impairment had lasted for more than twelve months and could be expected to last indefinitely. Further, it is absolutely clear from the evidence that to the extent that plaintiff is unable to engage in substantial gainful activity, such inability is a result of this mental impairment. There is no evidence of any other reason. Compare Yawitz v. Weinberger, *supra.*

▮ The question remaining is whether plaintiff is unable to engage

in any substantial gainful activity within the meaning of § 223(d) of the Act. In this regard it is clear that a claimant need not be a total "basket case" before he meets this requirement. A claimant's situation must be viewed in a practical manner, and the test is whether any particular job is realistically within his physical or mental capabilities. And, although a claimant will not be found disabled merely because he is unable to perform his former work, if he demonstrates that his impairment is of sufficient severity to preclude him from performing his former work, the burden shifts to the Secretary to prove that there is some other kind of substantial gainful employment which the claimant is able to perform. See Timmerman v. Weinberger, 510 F.2d 439 (8th Cir. January 29, 1975) and cases cited therein. See also Klug v. Weinberger, 514 F.2d 423 (8th Cir. April 15, 1975).

In this case the evidence that plaintiff has been totally unable to perform any substantial gainful employment on and after February of 1967 is overwhelming. The plaintiff's statements are to the effect that by February of 1967 his nervous condition, as he terms it, had deteriorated to such an extent that he was totally unable to function in an employment situation. The expert opinion and conclusion of the examining psychiatrist with extensive acquaintance with the plaintiff's case, Dr. Loutzenhiser, is that the plaintiff's inability to cope with stress is so advanced that he "is unable to function in any type of normal work setting". And, in Dr. Loutzenhiser's expert opinion, the plaintiff's condition is so severe that he is not even a good candidate for any type of vocational training. The conclusion of Dr. Childs is that the plaintiff is "effectively disabled from a regular employment." The evidence establishes not only that plaintiff's impairment prevented him from returning to his former work, but all of the expert medical evidence in the case is in agreement that he is precluded from performing any work whatsoever.

■ It is difficult to determine upon what evidence the hearing examiner based his conclusion that plaintiff is not so impaired as to be precluded from performing substantial gainful activity. In his "Evaluation of the Evidence" the hearing examiner did not consider the report and expert opinion of Dr. Loutzenhiser. And, although commenting in some detail on the report of Dr. Childs, the hearing examiner disregarded Dr. Childs' conclusion that the plaintiff is effectively disabled from any regular employment. The hearing examiner apparently based his conclusion that plaintiff was able to perform substantial gainful activity upon those portions of Dr. Childs' report indicating that the plaintiff thought logically and coherently, did not suffer from psychosis, overt thought disorder, hallucinations or delusions, and showed no evidence of defective reality testing or an abnormal neurological state. However, it is implicit in Dr. Childs' report and conclusion that notwithstanding these facts plaintiff's ailments do preclude him from engaging in any kind of regular employment. The Secretary may not arbitrarily choose to ignore this uncontroverted expert medical evidence, as he has apparently done in this case. Klug v. Weinberger, 514 F.2d 423 (8th Cir. 1975).

As noted, the plaintiff did establish that his impairment precluded him from returning to his previous employment, or any employment. The burden then shifted to the Secretary to show that there is some kind of substantial gainful employment which the plaintiff could perform, his mental impairment notwithstanding. Klug v. Weinberger, *supra*, Timmerman v. Weinberger, *supra*. Not only did the hearing examiner fail to show that there is some kind of substantial gainful employment which the plaintiff is capable of performing, he did not even attempt to make such a showing.

■ In summary, the only conclusion that can be reached from the record is that Mr. Burns' condition reached a level of severity in February of 1967 so as to totally disable him, and that this disability continued unabated throughout the total time period prior to the filing of this action. The Secretary's decision in 1969 denying plaintiff's claim for disability benefits was clearly erroneous, as was the Secretary's failure to reopen plaintiff's 1968 claim upon his requests in connection with his 1970 application for benefits. In these circumstances it would be clearly unjust to deny plaintiff of his disability insurance benefits. Accordingly, this review action is not barred under principles of administrative *res judicata* or under the sixty day time limit for review actions contained in § 205(g) of the Act, and judgment will be entered for the plaintiff. Lauritzen v. Weinberger, 514 F.2d 561 (8th Cir. 1975).

For the reasons stated, and under the provisions of § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), it is hereby

Ordered that the decisions of the Secretary denying plaintiff disability insurance benefits on his 1968 claim and declining to reopen plaintiff's 1968 claim pursuant to plaintiff's 1970 request be and hereby are reversed. The Secretary is directed to reopen plaintiff's 1968 claim pursuant to the provisions of 20 C.F.R. § 404.957(c)(8) and to grant the claim for disability insurance benefits. The costs are taxed against the Secretary.